214 N.J. Super. 517 (1986)
520 A.2d 761
JOYCE WILLIAMS, PLAINTIFF-APPELLANT,
v.
ROBERT GORMAN, DEFENDANT, AND COMMUNITY REALTY MANAGEMENT, IRWIN YEAGLE, AND THE MANSIONS APARTMENTS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 24, 1986.
Decided December 11, 1986.
*519 Freeman, Zeller and Bryant, attorneys for appellant (Allen S. Zeller, on the brief).
Stanley P. Stahl, attorney for respondents (Israel N. Eisenberg on the brief).
Before Judges J.H. COLEMAN and R.S. COHEN.
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
Plaintiff appeals from a partial summary judgment dismissing the first and third counts of her complaint which alleged tort claims against a landlord and others for damages caused by a tenant. Plaintiff resided in the Mansion Apartments in which defendant Gorman was her upstairs neighbor. The first count of the complaint alleged that Gorman engaged in disruptive and assaultive conduct in February 1979, September 19, 1980 and September 13, 1982 which caused plaintiff to sustain bodily injuries and property damages. That count also alleged that the Mansion Apartments, Community Realty Management and Irwin Yeagle, the corporate and resident managers respectively of the apartment complex, were negligent because they failed to take appropriate remedial action such as evicting Gorman. The second count alleged breach of implied warranty of habitability and quiet enjoyment. The third count alleged willful failure to provide adequate security. Following a trial on the alleged breach of implied warranty of habitability and quiet enjoyment, the trial judge entered judgment for plaintiff and awarded her damages of $133 based upon an abatement of her rent from January 1, 1981 to October 31, 1983, when Gorman was evicted. No appeal has been taken from the rent abatement portion of the final judgment. We now affirm the entry of partial summary judgment.
The crucial question raised on this appeal is whether defendants had a duty to evict Gorman before plaintiff sustained personal injuries or property damages. Based upon the depositions, *520 interrogatories and exhibits which the trial judge considered at the time partial summary judgment was granted, the following facts appear. After Gorman moved into his apartment in August 1978, plaintiff observed that there was continual drug traffic in and out of Gorman's apartment, that members of the Pagan Motorcycle Gang frequented it, and that Gorman had violent fights with his wife.
The first incident specified in the complaint occurred in February 1979, when some members of the motorcycle gang had a fight in Gorman's apartment. At one point plaintiff heard some heavy furniture being thrown, whereupon a chandelier in her apartment fell from the ceiling and broke a glass table top. Plaintiff spent $300 to replace the glass. Plaintiff reported this incident to Irene O'Grady, an employee of Community Realty Management, who promised that Gorman would be evicted. Plaintiff also called the police, who told her that they had already received other complaints; the police came but did not arrest anyone that night.
A second incident occurred in September 1980 when a gunshot blast from Gorman's apartment blew a hole in plaintiff's ceiling. Though she was not shot, the force of the blast, in her words, "blew me clear across the room, and I hit my face against my dining room chair and the floor." Some chairs were damaged as well. She suffered a lacerated eye and damage to her nose which ultimately required surgery. Plaintiff reported the gunshot incident to the police, as a result of which Gorman was arrested and convicted of discharging a firearm. He was incarcerated from November 1980 until late 1982. Plaintiff also reported the incident to Community Realty Management, which again promised that they would take action against Gorman. They sent him a "Lease Violation Report" but took no further steps.
The third incident described in the complaint was in September 1982, when, during a violent fight between Gorman and his wife, some "ceramic letters" were dislodged from the wall *521 above plaintiff's daughter, who was sleeping at the time. The "ceramic letters" struck her on the head and required her to receive emergency hospital care. Plaintiff again called the police. Apparently before the police arrived, Gorman tried to break into plaintiff's apartment with a crowbar and threatened to kill her.
In December 1982 plaintiff obtained counsel, who demanded that Community Realty take some action. Finally, by letter dated January 14, 1983 Community Realty notified Gorman's wife that her husband was prohibited from entering the premises. Community Realty formally terminated the Gorman lease and the Gormans were finally evicted.
As a result of the 1979 and 1980 incidents, plaintiff claimed personal property damages of $900 and wage losses of between $18,000 and $22,000 per year. Plaintiff has not itemized any claimed medical expenses. Plaintiff has not made a claim for damages based upon the September 1982 occurrence.
Because plaintiff made no claim for damages from the 1982 incident, the issues before the trial court at the time the partial summary judgment was under consideration were whether, as a matter of tort law, (1) Gorman's conduct before the February 1979 incident should have prompted defendants to evict him, and (2) Gorman's cumulative conduct before the September 1980 incident rendered negligent defendant's failure to evict him before that date.
We begin our legal analysis with the principle that the relationship between landlord and tenant does not impose upon a landlord the duty to protect a tenant against the criminal acts of a third person. Braitman v. Overlook Terrace Corp., 68 N.J. 368, 374 (1975). In Braitman the landlord had failed to repair a broken dead bolt lock on the door to the tenant's apartment, despite the tenant's repeated complaints. A burglar broke in and took $6,100 worth of personal property. The tenant was allowed to recover. The New Jersey Supreme Court analyzed the landlord's liability in terms of whether the *522 tenant's loss was the foreseeable consequence of the landlord's unreasonable enhancement of the risk. 68 N.J. at 381-383. The burglary was foreseeable, observed the court, in that the landlord was aware of prior break-ins in the area. The court observed that the landlord unreasonably enhanced the risk by failing to repair the lock after receiving notice of its defective condition. Id. at 383.
A landlord's tort liability for the criminal acts of third persons was further clarified in Trentacost v. Brussel, 82 N.J. 214 (1980), in which a tenant was mugged in the hallway of an apartment house by an unknown person. Evidence at the trial of the tenant's negligence action against the landlord revealed that there had been no lock on the main entrance to the building, and that the neighborhood was known by police to be the site of frequent crimes. Indeed, on various occasions the tenant herself had reported to the landlord the presence of suspicious persons in the hallways. The tenant was allowed to recover $25,000 for personal injuries caused by the assault based upon a breach of the landlord's contractual obligation to provide security in the common areas of the apartment complex. In affirming the judgment, our Supreme Court stated:
... As in Braitman, here the landlord was confronted with the existence of a high level of crime in the neighborhood.... Yet he failed to install a lock on the front door leading in to the building's lobby. By failing to do anything to arrest or even reduce the risk of criminal harm to his tenants, the landlord effectively and unreasonably enhanced that risk. 82 N.J. at 222.
The court in Trentacost emphasized that its holding (and that in Braitman) was grounded in "traditional principles of negligence law" as opposed to any novel expansion of a landlord's duty. Ibid. "If the reasonably prudent person would foresee danger resulting from another's voluntary, criminal acts, the fact that another's actions are beyond defendant's control does not preclude liability." Ibid. The "crucial factor" in deciding whether a duty exists is foreseeability of the harm. Id. at 223. The court further held that the implied warranty of habitability obligates a landlord "to furnish reasonable safeguards to protect tenants from foreseeable criminal activity on the premises." *523 Id. at 228. A breach of that warranty renders a landlord "liable to the tenant for the injuries attributable to that breach." Ibid.
In Braitman and Trentacost the third parties were not identified as tenants residing in the same apartment complex in which the plaintiff resided. We perceive no reason, however, why Braitman and Trentacost should not apply with equal force where the third party has been so identified, and there is no special relationship, such as a familial relationship, between the criminal and the plaintiff. See Bennett v. Ames, 77 A.D.2d 390, 434 N.Y.S.2d 766, 767 (App.Div. 1980) (child of one tenant struck by baseball bat wielded by child of another tenant); Trice v. Chicago Housing Authority, 14 Ill. App.3d 97, 302 N.E.2d 207, 208-209 (App.Ct. 1973) (tenant killed by television set thrown over railing by another tenant from above); see also Restatement 2d, Torts, § 315 at 122 (1965). The landlord-tenant relationship alone does not constitute such a special relationship requiring limitations be placed on Braitman and Trentacost. See Trice, supra, 302 N.E.2d at 209.
Application of Braitman and Trentacost to the present case persuades us to conclude that prior to the February 1979 fight in Gorman's apartment, the landlord was not on notice as to the assaultive and destructive tendencies of Gorman. Plaintiff indicated that prior to the February 1979 incident, there was a lot of noise, drug trafficking and fighting in Gorman's apartment, but she never reported it to the landlord. Absent notice or knowledge of Gorman's dangerous propensities, the landlord could not reasonably foresee any harm to plaintiff or other tenants in the building. The absence of any foreseeability of harm means defendants were under no duty to evict Gorman before the February 1979 episode.
Next, we must decide whether the incident in September 1980 was foreseeable, occurring as it did some 18 months after the first reported incident. We think not. The first incident in 1979 involved the jarring loose of a chandelier in plaintiff's *524 apartment as the result of Gorman throwing or moving furniture. The second episode in September 1980 involved a shotgun blast in Gorman's upstairs apartment which blew a hole in the ceiling of plaintiff's downstairs apartment. The first episode was noncriminal while the second was. We fail to see how the first incident would cause a reasonable person to recognize or anticipate that Gorman would commit a criminal act by shooting through the walls or floor of the apartment in which he resided thereby injuring another tenant. Nor do we perceive how the landlord could have foreseen that Gorman would assault another tenant based upon possible drug trafficking and fighting in Gorman's apartment. The two episodes were entirely of two different breeds. Therefore, as a matter of law, the circumstances of this case do not demonstrate how the failure of the landlord, through its agents, servants and employees, to evict Gorman or take other remedial action before the September 1980 shotgun blast unreasonably enhanced the risk of harm to plaintiff. In these circumstances, the law insulates the landlord and its agents, servants, and employees from liability.
In addition, plaintiff cannot recover her damages based upon a breach of an implied warranty of habitability. In Trentacost the court found the warranty of habitability required the landlord to maintain proper security in the common areas of an apartment building. Trentacost, supra, 82 N.J. at 228. The security requirement in the common areas, however, does not extend to the interior of the apartments. Here, plaintiff was injured by the shotgun blast while inside her apartment, which was not a common area of the apartment complex. Thus when the criminal conduct of one tenant in his apartment causes harm to another tenant in her apartment, the injured tenant must establish foreseeability under a negligence theory. Damages for injuries attributable to a breach of the implied warranty of habitability are recoverable under Trentacost only when the breach is based upon a failure to provide *525 adequate security in the common areas. Ibid.[1] Otherwise, damages recoverable for a breach of the implied warranty of habitability are limited to rent abatement in accordance with Berzito v. Gambino, 63 N.J. 460, 469 (1973).
Finally, the dismissal as to Yeagle is inconsequential because he acted in his capacity as an employee of Community Realty Management which continued in the case. No claim has been made against him except as an employee. The dismissal is therefore harmless in view of our decision.
The partial summary judgment is affirmed.
NOTES
[1] For more detailed discussions of a landlord's liability for breach of security, see Zacharis, The Politics of Torts, 95 Yale L.J. 698 (1986) and Lawrence, Dabertin & Ray, Landlord Liability for Criminal Acts of Third Parties, For the Defense, Dec. 1986 at 16.