Janie H. MORTON, Appellant,

v.

Thomas D. KIRKLAND, et al., Appellees.

No. 87–1274.

District of Columbia Court of Appeals.

Argued April 17, 1989.
Decided May 24, 1989.

Richard S. Schrager, for appellant.

Edwin A. Sheridan, Washington, D.C., for appellees.

Before MACK, BELSON, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

The appellant, Janie Morton, sued her landlord and management company, Kirkland and Central City Property Management, Inc., *et al.* (hereinafter collectively the landlord),[1] as well as Grant, a tenant occupying another apartment on the premises, for damages resulting from an alleged assault on her by Grant. Grant died while the suit was pending. Ms. Morton's claim against the landlord was based on her contention that the landlord had been made aware of Grant's assaultive propensities; that the landlord had recognized these propensities and had initiated a suit for possession on account of them, which suit the landlord had later dismissed; and that by failing to evict Grant, the landlord had proximately caused Ms. Morton's injuries. The trial judge granted the landlord's motion for a directed verdict at the conclusion of the plaintiff's case. We affirm.

1. Central City Property Management, Inc. has managed the property since 1978. Kirkland

The record in this case shows that there had been a substantial history of complaints and counter-complaints between Ms. Morton and Grant, much of which predated the acquisition of the premises by the current landlord in 1978. The most serious of the alleged incidents occurred during 1976 or 1977, when Grant allegedly brandished a gun in Ms. Morton's presence. Another incident in which Grant's wife (then his fiancee) allegedly threatened Ms. Morton with a cane also occurred during the prior landlord's incumbency. No one was injured during either episode. Ms. Morton testified that when Central City took over management responsibilities, she apprised Central City representatives of her problems with Grant.

On July 1, 1978, the new landlord brought an action for possession against Grant. The suit was apparently based in part on Ms. Morton's complaints. The docket sheet of that proceeding discloses that the action was dismissed by the landlord, but there is no evidence in the record as to why this occurred.

It appears that the Grants and Ms. Morton continued to quarrel after 1978, and Ms. Morton claimed that Mrs. Grant threatened her over the telephone on November 13, 1981. The assault by Grant allegedly occurred on November 15, 1981.

The law imposes a special duty upon the landlord to protect his tenant from foreseeable criminal acts of third parties. *Kline v. 1500 Massachusetts Avenue Apts.,* 141 U.S.App.D.C. 370, 375, 439 F.2d 477, 482 (D.C.1970); *Spar v. Obwoya,* 369 A.2d 173 (D.C.1977). Under some circumstances, this special duty may be breached where a landlord fails to take reasonable steps to protect a tenant from a dangerous co-tenant. *Sinai v. Polinger Co.,* 498 A.2d 520, 529, 531 (D.C.1985); *Lambert v. Doe,* 453 So.2d 844 (Fla.App.1984). Protection of tenants from criminal acts of other tenants, not associated with the landlord's failure to maintain the premises, poses prob-

purchased the premises in 1981.

lems different from those involving protection from intruders. Security measures can prevent the entry of unauthorized persons on the premises, but a fellow tenant has the right to be present in common areas of an apartment complex, so that the landlord has less power to control his conduct. *See Gill v. New York City Housing Authority,* 130 A.D.2d 256, 262–64, 519 N.Y.S.2d 364, 370 (1st Dept.1987).[2]

■ A landlord is not obliged to institute eviction proceedings whenever a tenant accuses another tenant of harassment. *Cf. Graham v. M & J Corp.,* 424 A.2d 103, 106 (D.C.1980), citing *Trice v. Chicago Housing Auth.,* 14 Ill.App.3d 97, 100, 302 N.E.2d 207, 209 (1973); *see also Gill, supra; Smith v. Howard,* 489 So.2d 1037 (La.App. 1986). To prevail in an action against the landlord predicated on the criminal acts of a fellow tenant, a complaining tenant must establish both that the criminal conduct was foreseeable and that it would have been prevented if the landlord had acted with reasonable prudence under all of the circumstances. *Williams v. Gorman,* 214 N.J.Super. 517, 522, 520 A.2d 761, 764–65 (1986); *Gill, supra,* 130 A.D.2d at 264, 519 N.Y.S.2d at 371.

■ The trial judge concluded, and we agree, that the evidence submitted by the plaintiff, when viewed in the light most favorable to her, fell short as a matter of law of sustaining her burden on either issue. There was no evidence of a prior act of violence by Grant against Ms. Morton, and the two principal incidents complained of had occurred approximately four years earlier. *Cf. Williams, supra* (incidents occurred approximately one to two years earlier). The plaintiff herself testified that she was surprised by Grant's assault, and we find it difficult to discern under these circumstances how the landlord could be expected to anticipate it. Moreover, the plaintiff has failed to establish that the landlord could have prevailed in the dismissed eviction proceeding or that there was sufficient evidence available to persuade a court or jury to evict Grant.[3] Accordingly, we conclude that the trial judge correctly held that if the jury were to find for Ms. Morton, it would have had to speculate with respect to the critical issue of causation.

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*

---

**2.** As the court said in the distinguishable but nevertheless instructive *Gill* case,

But the landlord in the present case is not being held to account for harm resulting from negligently maintained premises. Rather, defendant is here cast in damages for failing to protect a tenant from harm having as its source the psychiatric condition of a co-tenant. Plaintiff's recovery is not premised upon defendant's failure to take relatively minimal steps to fix a lock or install a light fixture, but upon its failure to afford protection of a fundamentally different sort against the possible adverse consequences of one of its tenant's mental illness. This is something which a landlord cannot, in fairness, be called upon to do. A landlord is not competent to assess the dangerous propensities of his mentally ill tenants, nor does he have the resources, or control over his tenants necessary to avert the sort of tragedy presented by this case. 130 A.D.2d at 263, 519 N.Y.S.2d at 370.

**3.** The landlord could not have done anything about the threats allegedly made by Mrs. Grant two days before the assault. Ms. Morton's counsel conceded at argument the obvious fact that a possessory action cannot be successfully completed in two days.