239 N.J. Super. 269 (1990)
571 A.2d 296
DANIEL BURKE AND MARCIA BURKE, PLAINTIFFS-RESPONDENTS,
v.
ROBERT BRIGGS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1990.
Decided March 1, 1990.
Before Judge DREIER, SCALERA and D'ANNUNZIO.
*270 Christopher G. Meikle argued the cause for appellant (DeYoe, Heissenbuttel and Mattia, attorneys, Christopher G. Meikle, on the brief).
Sean F. Colquhoun argued the cause for respondents (Colquhoun and Colquhoun, attorneys, Sean F. Colquhoun, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
This case deals with the standard to be applied to determine liability of a landowner for a tree which falls from his property onto his neighbor's property for no apparent reason.
On or about June 16, 1987, defendant, Robert Briggs, was the owner of premises known as 1100 Van Houten Avenue in Clifton, New Jersey. Plaintiffs, Daniel and Marcia Burke, were the owners of adjoining property known as 8 Hillcrest Avenue. On that date, a large white oak tree growing on Briggs' property suddenly fell over onto the Burkes' property, causing extensive damage to their garage.[1]
The Burkes were insured[2] for such an occurrence and the insurance company sent a representative to inspect the cause of the damage to the premises. He noted that the base of Briggs' tree "had apparently been treated by a tree surgeon" as a result of "some disease or carpenter ants" activity, but that it otherwise "appeared to be perfectly healthy". Other than that, there appeared no reason for the tree to have fallen. However, Briggs denied that the tree had ever been treated by anyone or that he had any prior knowledge of the condition which caused the tree to suddenly fall.
*271 The original complaint in this action asserted a claim against defendant based on negligence but was later amended to assert a second count reciting the elements of a nuisance. Plaintiff then moved for summary judgment on the liability aspect, contending that defendant was "strictly liable" for the damages caused by the fallen tree because it amounted to a "nuisance." The defendant resisted by asserting that liability should be determined on the basis of traditional negligence principles of tort liability and arguing that summary judgment was therefore inappropriate. Relying on D'Andrea v. Guglietta, 208 N.J. Super. 31, 504 A.2d 1196 (App.Div. 1986), the trial judge reasoned that the fallen tree constituted a "nuisance" because defendant had failed to use his property in a manner that "does not damage or unreasonably interfere with the use of an adjacent land owner's property." He further concluded that such a nuisance "imposes a strict liability" and granted summary judgment to plaintiffs.
Our research reveals no New Jersey case factually on point. Therefore, we look to the logic, policy and rationale which underlies similar cases in this and other jurisdictions, the Restatement of the Law, Torts 2d, and the applicable principles enunciated by recognized authorities in the field. Cf. Berger v. Shapiro, 30 N.J. 89, 96-99, 152 A.2d 20 (1959).
There has arisen a distinction between conditions of land artificially created as opposed to those which come into existence naturally. 4 Restatement, Torts 2d § 839 at 161. "The former are actionable (cit. omitted); the latter are not." D'Andrea v. Guglietta, 208 N.J. Super. at 36, 504 A.2d 1196. In this regard, it has been held that the planting of a tree which causes damage to adjoining premises is not a natural condition. Id. at 36-37, 504 A.2d 1196. Under such distinction, the damages suffered by plaintiffs in this case could be "actionable" against defendant if it were presumed or proven that he or some predecessor in title may have planted the tree in question.
*272 Some of the cases concerning the question of liability turn on whether the incident lends itself to identification as a nuisance, a trespass or some other type of intrusion. However, we question the soundness of this approach in a modern day society.
It has been observed, that "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word `nuisance'" Prosser and Keeton, The Law of Torts, (5th Ed. 1984), § 86 at 616. All of the authorities, however, seem to agree that a private nuisance is based on one's interference with another's use and enjoyment of land. Id., § 87 at 619. On the other hand, the trespass to land concept has also been applied to cover situations where the actor interferes with one's enjoyment of his land. Id., § 13 at 67-84. The distinction between nuisance and trespass "has become wavering and uncertain" and has often led to results that are difficult to explain. Id., § 87 at 622.
In 4 Restatement, Torts 2d, introductory note to Chapter 4, at 84-85, private nuisance is used to describe "the invasion of the private interest in the use and enjoyment of land." "Trespass on land" as used in that work, however, also means "entries on land resulting directly or indirectly from the actors act [and] also the presence on the land of a thing which it is the actor's duty to remove." 1 Restatement, Torts 2d, Chapter 7, Topic 1, Intentional Entries on Land, at 276. The Restatement attempts to distinguish between those two legal concepts by further defining a private nuisance as, "a nontrespassing invasion of another's interest in the private use and enjoyment of land." (Emphasis supplied.) 4 Restatement, Torts 2d, § 821 D, at 100.
Applying those concepts in this case still does not result in strict liability. With respect to a private nuisance, the Restatement indicates,

*273 § 822 General Rule.
One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
(a) intentional and unreasonable, or
(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities. [Id. at 108].
On the other hand, if the conduct in question is labelled a trespass, the Restatement still maintains the distinction between intentional, ultrahazardous and accidental intrusions. 1 Restatement, Torts 2d, §§ 158, 165 and 166.
As to the latter, which seems to best fit this case, it provides,
§ 166. Non-liability for Accidental Intrusions
Except where the actor is engaged in an abnormally dangerous activity, an unintentional and non-negligent entry on land in the possession of another, or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest. [Emphasis supplied.]
Thus, neither the theory of nuisance or trespass would result in the application of such absolute liability here, under Restatement principles. Moreover, the imposition of such strict or absolute liability for the conduct complained of here is basically unfair and inappropriate. Cf. Jackson v. Muhlenberg Hosp. et al, 96 N.J. Super. 314, 321, 232 A.2d 879 (App.Div. 1967), rev'd on other grounds, 53 N.J. 138, 249 A.2d 65 (1969). Prosser and Keeton, supra, at 536-538. Such liability without fault should not be imposed, whether that activity be classified as a nuisance or a trespass, absent intentional or hazardous activity requiring a higher standard of care or, as a result of some compelling policy reason. See State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 468 A.2d 150 (1983), for a discussion of imposition of strict liability principles for conducting abnormally dangerous activities on land. Applying these principles to D'Andrea, supra, we question the application of the "strict liability" concept there.
Whatever the ramifications of principles discussed might be in another given situation, we are satisfied that, in the context *274 of this case, "[t]he process of adjudication requires recognition of the reciprocal rights of each owner to reasonable use, and a balancing of the conflicting interests." Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 449, 149 A.2d 599 (1959). As such, liability should not be imposed without proof of some negligence or unreasonable activity by the defendant. Gellenthin v. J. & D., Inc., 38 N.J. 341, 352-353, 184 A.2d 857 (1962); State v. Exxon Corporation, 151 N.J. Super. 464, 482-484, 376 A.2d 1339 (Ch.Div. 1977).
In other words, regardless of the analysis one might urge and the consequent label attached, be it nuisance, trespass or negligence, the issue here should logically depend on whether the offending landowner somehow has made a negligent or unreasonable use of his land when compared with the rights of the party injured on the adjoining lands. Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. at 449, 149 A.2d 599. See generally Melnick v. C.S.X. Corp., 68 Md. App. 107, 510 A.2d 592, aff'd, 312 Md. 511, 540 A.2d 1133 (Md. App. 1988) for a discussion of the applicability of nuisance, trespass and negligence theories to this area. See 1 Am.Jur.2d, Adjoining Landowners, §§ 7-11, at 696-700, for a discussion of the various theories of liability applied in this area.
We therefore hold that the ultimate question for the trier of facts to determine in such a case, is one of negligence or reasonableness, absent the previously noted exceptions for intentional or abnormally dangerous activities. 3 Dooley, Modern Tort Law, § 40.11, at 279-280; Prosser and Keeton, supra, Owners and Occupiers of Land, § 57 (see the discussions under the title, Natural Conditions) pages 390-391; 2 C.J.S. Adjoining Landowners, § 58-67; 1 Am.Jur.2d, Adjoining Landowners, § 25 at 708; 54 A.L.R. 4th, Liability  Fall Of Tree Or Limb, 530 (1987). We do not regard the principles in D'Andrea as controlling because of the unusual nature of the intrusion in that case. There, the defendant landowner had planted a tree near the property line and could be charged with knowledge that the roots inevitably would grow onto his neighbor's *275 property. The roots then surreptitiously caused damage over a period of years. Contra, Chandler v. Larson, 148 Ill. App.3d 1032, 102 Ill.Dec. 691, 500 N.E.2d 584 (Ill. App. 1 Dist. 1986), (where the court held the offending landowner only to a duty of reasonable care in such circumstances.)
To repeat, the focus in this case should be on whether this defendant was negligent in not making a reasonable use of his property. Such a determination merits a consideration of the various attendant circumstances and factors such as, the nature of the incident, the danger presented by the presence of the tree, whether Briggs, by making inspections, could or should have known of its condition, what steps he could have taken to prevent it from falling onto plaintiffs' property, etc. Ivancic v. Olmstead, 66 N.Y.2d 349, 497 N.Y.S.2d 326, 488 N.E.2d 72, (App.Div. 1985), cert. den., 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986); Narsh v. Zirbser Brothers, Inc., 111 N.J. Super. 203, 208-209, 268 A.2d 46 (App.Div. 1970); Prosser and Keeton, supra, at 391.
In light of these observations, it also appears that even the distinction between natural and artificial conditions might now be considered anachronistic as a basis for determining actionability. In these circumstances the focus should be solely on one's duty of reasonable care which may shift, depending on the changing factors previously noted. Sprecher v. Adamson Companies, 30 Cal.3d 358, 178 Cal. Rptr. 783, 636 P.2d 1121 (Cal. 1981). Cf. Turner v. Coppola, 102 Misc.2d 1043, 424 N.Y.S.2d 864, 866 (Sup.Ct. 1980); Phillips v. Sun Oil Co., 307 N.Y. 328, 121 N.E.2d 249 (Ct. of App.N.Y. 1954). The essential inquiry of reasonable or unreasonable use should depend on the circumstances of each case and not on whether it was a "natural or artificial condition."
Since the issue of reasonable care by defendant was the proper standard to be used, unquestionably such an issue here was for the jury to determine and was therefore, inappropriately *276 disposed of by summary judgment. Weller v. McCormick, 52 N.J.L. 470, 473, 19 A. 1101 (Sup.Ct. 1890).
Reversed and remanded.
NOTES
[1] The amount of damages is not in dispute, having been established at $7,900.
[2] The fact that this is a subrogation suit obviously has no bearing on the issue herein.