731 A.2d 118 (1999)
322 N.J. Super. 460
Jorge RUIZ, an infant, by his parents and guardians ad litem, Flaviana Cholula and Pedro RUIZ, and Flaviana Cholula and Pedro Ruiz, individually, Plaintiffs-Appellants,
v.
H. Robert KAPRELIAN, Defendant-Respondent,
and
Lawrence Runsdorf and Adam Runsdorf, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1998.
Decided June 30, 1999.
*119 Neal M. Unger, Edison, for plaintiffs-appellants.
Edward L. Thornton, Rahway, for defendant-respondent (Methfessel & Werbel, attorneys; Mr. Thornton, on the brief).
Before Judges SKILLMAN, PAUL G. LEVY and LESEMANN.
The opinion of the court was delivered by *120 SKILLMAN, J.A.D.
The issue presented by this appeal is whether a landlord has absolute liability for an infant tenant's personal injuries caused by exposure to lead paint in the landlord's premises. We conclude that the trial court correctly instructed the jury that the landlord could be held liable only if he knew or should have known of the presence of lead paint. Consequently, we affirm the jury verdict in favor of the defendant landlord.
From January until November of 1991, plaintiff Jorge Ruiz lived with his parents, plaintiffs Flaviana Cholula and Pedro Ruiz, in an apartment in New Brunswick owned by defendant Robert Kaprelian. Jorge was three years old at the beginning of this tenancy and turned four during the year. In April of 1991, a screening program at Jorge's school revealed elevated levels of lead in his blood. As a result, the Middlesex County Department of Health performed tests in the Kaprelian apartment and discovered lead paint in various locations accessible to Jorge. On May 23, 1991, the Department sent a letter ordering Kaprelian to abate the condition. The Department performed a follow-up inspection on September 6, 1991, which determined that the condition had been fully abated. After Jorge's parents moved out of the Kaprelian apartment in late 1991, they moved into an apartment owned by defendants Lawrence and Adam Runsdorf, which was also found to contain dangerous levels of lead paint. The family continued to live in this apartment until September 1994. Psychological testing of Jorge revealed language and motor skills deficits and a low I.Q., which are alleged consequences of exposure to lead during early childhood.
Plaintiffs brought this personal injury action, alleging that Jorge's exposure to lead in the apartments leased from Kaprelian and Runsdorf had caused him to suffer both physical and mental disabilities. Plaintiffs settled with the Runsdorf defendants, and the case was tried before a jury solely against Kaprelian. At a charge conference, plaintiffs asked the trial court to submit the case to the jury not only under a negligence theory but also on theories of a breach of an implied warranty of habitability and nuisance, under which Kaprelian could be held liable for Jorge's injuries without showing that he knew or should have known of the presence of lead paint in the apartment. The court denied this request and instructed the jury solely under a negligence theory of liability.
The jury found that Kaprelian had not been negligent, and the court entered judgment in accordance with the verdict. The court subsequently denied plaintiffs' motion for a new trial, which was based primarily on the court's refusal to instruct the jury regarding the alternative theories of liability under which Kaprelian could be held liable without a showing of fault.
On appeal, plaintiffs' primary argument is that the trial court erred in failing to instruct the jury regarding their claims of breach of the implied warranty of habitability and nuisance. Plaintiffs also argue that the jury verdict is against the weight of the evidence and that the court committed various errors in the conduct of the trial. We reject these arguments and affirm the order denying plaintiffs' motion for a new trial and the judgment entered in accordance with the jury verdict.

I
Plaintiffs' argument that the court erred in failing to instruct the jury regarding the landlord's implied warranty of habitability, under which Kaprelian would have absolute liability for the personal injuries allegedly suffered by Jorge as a result of his exposure to lead paint in Kaprelian's apartment, rests primarily upon Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436 (1980). The issue in Trentacost was "whether a landlord who provides inadequate security for common areas of rental premises may be liable for failing to prevent a criminal assault upon a tenant." Id. *121 at 217, 412 A.2d 436. The trial court concluded that a landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from a tenant's use of the common areas. Consequently, the court submitted the case to the jury under a negligence theory of liability, id. at 219, 412 A.2d 436, and the jury returned a verdict in plaintiff's favor. On appeal, the Supreme Court concluded that there was sufficient evidence to warrant submission of the case to the jury under traditional negligence principles. Id. at 220-23, 412 A.2d 436. Although the Court indicated that it "need go no further to affirm the judgment for the tenant," id. at 223, 412 A.2d 436, in dictum it discussed alternative theories of landlord liability under which the case also could have been submitted to the jury. Id. at 223-31, 412 A.2d 436. The Court stated that the principle that a residential lease includes an implied warranty of habitability, which previously had been applied in landlord-tenant actions, see, e.g., Berzito v. Gambino, 63 N.J. 460, 308 A.2d 17 (1973); Marini v. Ireland, 56 N.J. 130, 265 A.2d 526 (1970), also could be invoked in a personal injury action against a landlord. Trentacost, supra, 82 N.J. at 225-28, 412 A.2d 436. However, the Court did not indicate how the duties imposed under the implied warranty of habitability would differ from the duties imposed under traditional principles of negligence law.
Although Trentacost was decided almost twenty years ago, there is no reported decision in this State in which a personal injury claim against a landlord has been submitted to the jury on the basis of an alleged breach of the implied warranty of habitability. The few cases which have considered this theory of liability have construed the dictum in Trentacost narrowly and held that a tenant's personal injury claim could not be maintained under the implied warranty.
In Williams v. Gorman, 214 N.J.Super. 517, 520 A.2d 761 (App.Div.1986), certif. denied, 107 N.J. 111, 526 A.2d 182 (1987), a tenant suffered personal injuries and damage to her personal property as a result of another tenant's unruly conduct. The tenant asserted claims against the landlord based on both negligence and the implied warranty of habitability. The trial court granted summary judgment dismissing the tenant's negligence claim. Following a trial, the court found in the tenant's favor on her implied warranty of habitability claim but limited her damages to a partial abatement of rent for the period during which her quiet enjoyment of the premises had been disturbed. No appeal was taken from this part of the judgment. On the tenant's appeal from the dismissal of her personal injury and property damage claims, we concluded that the tenant had failed to present any evidence that the landlord had notice of the other tenant's dangerous propensities. Consequently, we affirmed the dismissal of the tenant's negligence claim. Id. at 523-24, 520 A.2d 761. We also rejected the tenant's personal injury claims under the implied warranty of habitability, stating that:
[W]hen the criminal conduct of one tenant in his apartment causes harm to another tenant in her apartment, the injured tenant must establish foreseeability under a negligence theory. Damages for injuries attributable to a breach of the implied warranty of habitability are recoverable under Trentacost only when the breach is based upon a failure to provide adequate security in the common areas. [82 N.J. at 228, 412 A.2d 436.] Otherwise, damages recoverable for a breach of the implied warranty of habitability are limited to rent abatement in accordance with Berzito v. Gambino, 63 N.J. 460, 469, 308 A.2d 17 (1973).

[Id. at 524-25, 520 A.2d 761.]
In Dowler v. Boczkowski, 148 N.J. 512, 691 A.2d 314 (1997), the Supreme Court adopted a similarly narrow view of the applicability of the implied warranty of habitability to a tenant's personal injury claim. The plaintiff in that case suffered *122 significant injuries when the only smoke detector in a single family house rented from the defendants did not sound an alarm during a fire. The Court affirmed a summary judgment dismissing plaintiffs complaint which alleged that the defendants had a duty to install and maintain smoke detectors. The Court concluded that the implied warranty of habitability "did not require the installation of smoke detectors in single-family homes before the obligation was created by statute and implementing regulations." Id. at 524, 691 A.2d 314. The Court also observed that "the absence of a smoke detector at a given location is readily apparent to a tenant" and that "[p]laintiffs [had] never complained to the landlord about the lack of smoke detectors or the placement of the existing smoke detector." Id. at 522, 691 A.2d 314.
Thus, Trentacost is the only reported decision in this State in which a court has indicated that it would be appropriate to submit a personal injury claim to the jury on the basis of an alleged breach of the implied warranty of habitability. Furthermore, Dowler seems to indicate that the warranty may be invoked only if a statute or regulation imposes a duty upon the landlord to take particular measures for the tenants' health or safety. Most significantly, neither Trentacost nor Dowler holds that a landlord may be held liable for personal injuries suffered by a tenant, without any showing of fault.
Nevertheless, seizing upon dictum in Trentacost that "[s]ince the landlord's implied undertaking to provide adequate security exists independently of his knowledge of any risks, there is no need to prove notice of such a defective and unsafe condition to establish the landlord's contractual duty," 82 N.J. at 228, 412 A.2d 436, plaintiffs argue that a landlord has absolute liability, under the implied warranty of habitability, for injuries caused by a dangerous condition such as lead paint. However, the entire opinion in Trentacost, including the section entitled "Implied Warranty of Habitability," is concerned with a landlord's duty to take "reasonable" measures for the security of his tenants. Thus, the essential conclusion of the section dealing with the implied warranty is that "the landlord's implied warranty of habitability obliges him to furnish reasonable safeguards to protect tenants from foreseeable criminal activity on the premises." Ibid. (emphasis added). Similarly, the sentence immediately following the sentence upon which plaintiffs have focused our attention states that to find a breach of the implied warranty of habitability, "[i]t is enough that defendant did not take measures which were in fact reasonable for maintaining a habitable residence." Ibid. (emphasis added). The Court also held that a violation of the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 to -28, and the regulations adopted thereunder, only "constitutes evidence of defendant's negligence." Id. at 231, 412 A.2d 436. And in the conclusion section of its opinion, the Court stated that "[o]ur analysis has led to the conclusion that a landlord has a legal duty to take reasonable security measures for tenant protection on the premises." Ibid. (emphasis added). Therefore, we reject plaintiffs' argument that Trentacost establishes absolute liability for any breach of the implied warranty of habitability which results in personal injury.
This conclusion is supported by decisions in other jurisdictions which hold that even if a breach of the warranty of habitability or violation of a statute is established, a landlord's liability is still governed by negligence principles, and to be found negligent, the landlord must be shown to have actual or constructive knowledge of the dangerous condition. See, e.g., Richwind Joint Venture No. 4 v. Brunson, 335 Md. 661, 645 A.2d 1147 (1994); Winston Properties v. Sanders, 57 Ohio App.3d 28, 565 N.E.2d 1280 (1989); Garcia v. Jiminez, 184 Ill.App.3d 107, 132 Ill.Dec. 550, 539 N.E.2d 1356, 1357-59, appeal denied, 127 Ill.2d 615, 136 Ill.Dec. *123 585, 545 N.E.2d 109 (1989); see also Gore v. People's Sav. Bank, 235 Conn. 360, 665 A.2d 1341 (1995); Juarez v. Wavecrest Management Team, Ltd., 88 N.Y.2d. 628, 649 N.Y.S.2d 115, 672 N.E.2d 135 (1996); see generally, S. Larsen, Annotation, Landlord's Liability for Injury or Death of Tenant's Child from Lead Poisoning, 19 A.L.R. 5th 405 (1994). For example, in Richwind, supra, the court concluded that the implied warranty of habitability established by the Baltimore Housing Code "necessarily includes flaking, loose or peeling lead-based paint within the scope of hazardous conditions that render the premises unfit for human habitation." 645 A.2d at 1151. However, the court also concluded that a plaintiff in a personal injury action who alleges a breach of this warranty must show negligence, and that to be found negligent, the landlord must either have known or had reason to know of the hazardous condition and must have had a reasonable opportunity to correct it. Id. at 1153-57. Consequently, the court concluded that liability cannot be imposed upon a landlord "based solely upon the existence of a defective condition that is violative of the statutes." Id. at 1153; see also 5 Fowler V. Harper, et al., The Law of Torts § 27.16 at 290-91 (2d ed.1986) (observing that implied warranty claims are generally based on statutory provisions "regulating the condition of rental housing for the protection of tenants," and concluding that "[w]here the implied warranty comprises housing code and similar statutory requirements, it would be familiar doctrine to regard those requirements as statutory duties the breach of which is at least evidence of negligence").
In view of New Jersey's extensive statutory and regulatory provisions relating to the detection and removal of lead paint in multiple dwellings,[1] we are satisfied that a landlord's warranty of habitability includes an obligation to take reasonable measures to assure that a multiple dwelling unit does not contain a dangerous level of lead paint. However, this does not mean that a landlord has absolute liability for injuries caused by the presence of lead paint, even if the injured party is unable to show that the landlord knew or should have known of this condition.[2] Although *124 a landlord may be assumed to be aware of the presence of lead paint if this condition is evident prior to the commencement of a tenancy, a court cannot impute knowledge to the landlord of a dangerous condition that arises during the course of a tenancy if the tenant fails to give the landlord notice of the condition. See Dwyer v. Skyline Apartments, Inc., 123 N.J.Super. 48, 301 A.2d 463 (App.Div.), aff'd o.b., 63 N.J. 577, 311 A.2d 1 (1973). Therefore, the trial court correctly rejected plaintiffs' proposed instruction regarding the implied warranty of habitability because that instruction indicated that Kaprelian could be held liable even if he did not have actual or constructive knowledge of the presence of lead paint in the apartment occupied by plaintiffs.[3]
We have no occasion in deciding this appeal to consider whether a trial court should give the jury a modified negligence instruction which refers to the warranty of habitability in a personal injury action against a landlord based on alleged exposure to lead paint.[4] The trial court instructed the jury with respect to the statutory provisions governing the detection and removal of lead paint from a multiple dwelling. The court stated that these provisions "set up a standard of conduct for owners of a rental property," and that if the jury found Kaprelian had "violated that standard of conduct," this would constitute evidence "to be considered ... in determining whether negligence ... has been established." Although the court's instruction relating to plaintiffs' negligence claim was not identical to the one plaintiffs had proposed, it was similar in most respects, and plaintiffs did not object to the language of the court's instruction. Moreover, this instruction conformed generally to the Model Jury Charge for a negligence claim against the owner of a multiple dwelling. Therefore, even if plaintiffs would have been entitled, upon request, to a modified negligence instruction, we are satisfied that the court's instructions did not constitute plain error warranting a new trial. See Bradford v. Kupper Assocs., 283 N.J.Super. 556, 573-74, 662 A.2d 1004 (App.Div.1995), certif. denied, 144 N.J. 586, 677 A.2d 759 (1996).

II
The second theory of absolute liability under which plaintiffs sought to have their claims against Kaprelian submitted to the jury was nuisance.[5]
*125 "The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land." Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448, 149 A.2d 599 (1959); accord Restatement (Second) Torts § 822 (1977). Consequently, the law of nuisance is not commonly relied upon in personal injury actions. Moreover, even in those relatively unusual cases in which a personal injury claim is grounded on nuisance, a plaintiff is generally required to show that the defendant was negligent. See Krauth v. Geller, 54 N.J.Super. 442, 452, 149 A.2d 271 (App. Div.1959) ("[A] nuisance may ... result from conduct which is merely negligent, where there is no intent to interfere in any way with the plaintiff, but merely a failure to take precautions against a risk apparent to a reasonable man." (quoting Prosser on Torts p. 392 (2d ed.1941))), aff'd, 31 N.J. 270, 157 A.2d 129 (1960). Even if a landowners' activity results in the creation of a condition which is classifiable as a nuisance, "[absolute] liability without fault should not be imposed ... absent intentional or hazardous activity requiring a higher standard of care or, as a result of some compelling policy reason." Burke v. Briggs, 239 N.J.Super. 269, 273, 571 A.2d 296 (App.Div. 1990). It is only an abnormally dangerous activity, and not simply the inadvertent creation of a dangerous condition on land, which will result in the imposition of absolute liability under a nuisance theory of liability. State, Dep't of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 487-93, 468 A.2d 150 (1983).
Applying these principles, there is no basis for imposing absolute liability upon Kaprelian under the law of nuisance. The mere ownership of a multiple dwelling is not an abnormally dangerous activity. Moreover, although the need for the detection and removal of hazardous lead paint is a "compelling policy" consideration, Burke v. Briggs, supra, 239 N.J.Super. at 273, 571 A.2d 296, it does not provide a basis for imposing liability upon a landlord even though the plaintiff is unable to show that the landlord either knew or should have known of the condition.

III
Plaintiffs also argue that the jury verdict with respect to their negligence claim was against the weight of the evidence and therefore the trial court should have granted a new trial.
An appellate court will affirm the denial of a new trial unless, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly appears that there was a miscarriage of justice under the law." Dolson v. Anastasia, 55 N.J. 2, 7, 258 A.2d 706 (1969). Moreover, in reviewing the denial of a new trial, an appellate court must give deference to the trial court's assessment of "demeanor" and other aspects of the trial "which are not transmitted by the written record." Ibid.
We are satisfied that Kaprelian's testimony provided ample support for the jury verdict in his favor. Kaprelian testified that (1) when he bought the apartment in 1984, it passed all city and state inspections; (2) prior to the commencement of plaintiffs' tenancy, he repainted the entire apartment with a fresh coat of latex paint, and there was no peeling, chipped or flaking paint at that time; (3) prior to the inspection of the apartment by the Department of Health, he received no complaints from plaintiffs about peeling, chipped or flaking paint; (4) when he received notice from the Department of Health concerning the presence of lead paint, he immediately placed duct tape over the surfaces with lead paint; and (5) within the following two weeks, he removed paint from the affected surfaces with a chemical paint remover. Furthermore, plaintiffs admitted that they never complained to Kaprelian about the presence of peeling, chipped *126 or flaking paint in the apartment. Based on this evidence, the jury could have found that plaintiffs failed to show that Kaprelian knew or in the exercise of reasonable care should have known about the presence of lead paint in their apartment prior to receiving notice of the condition from the Department of Health. The jury also could have found that Kaprelian acted with reasonable dispatch to abate the danger posed by the lead paint shortly after he received this notice. Therefore, there was an adequate basis for the jury's finding that Kaprelian was not negligent.

IV
Plaintiffs' arguments that the trial court erred in prohibiting plaintiffs' counsel from reading to the jury a government report concerning lead poisoning and in allowing Kaprelian to cross-examine plaintiffs' expert concerning the alleged misconduct of another expert whose studies he relied upon, and that the court made prejudicial comments in front of the jury, are clearly without merit and do not require discussion. R. 2:11-3(e)(1)(E). We only note that plaintiffs' arguments concerning the court's evidence rulings relate solely to evidence relevant to the causal relationship between Jorge's exposure to lead paint in the Kaprelian apartment and his alleged injuries, and that the jury did not reach this issue because it found Kaprelian was not negligent.
Affirmed.
LESEMANN, J.S.C. (temporarily assigned), concurring.
I concur, reluctantly, in the court's rejection of plaintiffs' claim of liability based on an alleged breach of a warranty of habitability. My concurrence is reluctant because, at this time, considering all we know and all that has been written about the danger of lead paint to small children, it may well be time to move beyond traditional concepts of negligence in fixing landlord responsibility for lead paint ingestion. Instead of holding that a landlord is liable for such injuries only if he or she knew or should have known of peeling and exposed lead paint, perhaps we should tell the landlord it is his or her obligation to know. If fulfilling that obligation requires diligent and regular inspections, then that is what the landlord must be prepared to do.
I disagree with the court's description of the warranty of habitability discussion in Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436 (1980) as dicta. In his opinion for the Court, Justice Pashman seems to have gone out of his way to describe the two theories of "conventional negligence and the implied warranty of habitability" as "alternative grounds" for liability. Id. at 231-32, 412 A.2d 436. I see no reason why we should not accept that characterization.
Nevertheless, I believe that application of the Trentacost doctrine to this case would represent a substantial extension of that rule. While the Court did not explicitly limit Trentacost to a case where a landlord failed to fulfill security obligations, that is the context in which the case arose, and the Court's entire discussion centers on the unlocked door and the failure to provide minimal security to tenants. While the language employed could logically be applied to lead paint as well as an unlocked door, the absence of any expansion or new application of the doctrine since Trentacost was decided in 1980, is, as the court's opinion notes, a significant factor. It suggests an apparent reluctance to even apply the doctrine and, given the narrow constructions afforded Trentacost in Dowler v. Boczkowski, 148 N.J. 512, 691 A.2d 314 (1997) and Williams v. Gorman, 214 N.J.Super. 517, 520 A.2d 761 (App.Div.1986), certif. denied, 107 N.J. 111, 526 A.2d 182 (1987), there may well be an inclination to narrow rather than broaden the concept of an implied warranty of habitability.
The absence of any substantial out-of-state support for plaintiff's theory of liability also suggests caution in considering an enlargement of the warranty of habitability *127 concept. So too does the fact that application of a breach of warranty principle to a lead paint case might well entail economic considerations far beyond those implicit in Trentacost. Installation and maintenance of a door lock would seem relatively inexpensive. The comprehensive treatment required to eliminate any vestige of old lead paint might be expensive indeed.
Given all of these considerations, it seems inappropriate for this intermediate appellate court to strike out on this new course and create a new basis of liability inconsistent with the principles that have generally governed landlord-tenant relationships until now. Accordingly, and notwithstanding the reservations and reluctance noted above, I concur in the court's conclusion.
NOTES
[1] The Hotel and Multiple Dwelling Law confers broad authority upon the Commissioner of Community Affairs to adopt regulations to assure that any multiple dwelling is maintained "in such a manner as is consistent with, and will protect, the health, safety and welfare of the occupants." N.J.S.A. 55:13A-7. Pursuant to this authority, the Commissioner has adopted comprehensive regulations relating to the maintenance of multiple dwellings. N.J.A.C. 5:10-1 to 27. These regulations impose a general obligation upon the owner of a multiple dwelling to keep "all parts of the premises ... clean and free of ... hazards to the health or safety of occupants," N.J.A.C. 5:10-6.1, and to maintain "[e]very unit of dwelling space ... so ... as to be fit for human use and habitation." N.J.A.C. 5:10-6.3. An owner of a multiple dwelling also has a more specific obligation to keep "[i]nterior walls, ceilings and other exposed surfaces in units of dwelling space ... free of flaking, loose or peeling paint." N.J.A.C. 5:10-8.2. In addition, N.J.S.A. 24:14A-5 declares that "[t]he presence of lead paint upon the interior of any dwelling or upon any exterior surface that is readily accessible to children causing a hazard to the occupants or anyone coming in contact with such surfaces is ... a public nuisance." Pursuant to this authority, the Commissioner of Health has adopted comprehensive regulations relating to the detection and removal of lead paint from residential premises. N.J.A.C. 8:51-3.1 to 7.7.
[2] We note that in 1992 Congress enacted the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C.A. § 485 1 to § 4856, sometimes referred to as Title X. Unlike previous lead-based paint legislation, such as the Lead-Based Paint Poisoning Prevention Act (LPPPA), 42 U.S.C.A. § 4821 to § 4846, Congress did not limit the scope of Title X to public housing. Instead, Title X requires any seller or lessor to disclose the dangers of lead paint as well as the presence of any known lead-based paint hazards to potential buyers and lessees. Violations of Title X may result in joint and several liability "to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C.A. § 4852d(b)(3). However, these provisions do not apply to this case because Title X was enacted after plaintiffs' tenancy in Kaprelian's apartment.
[3] Plaintiffs' proposed jury instruction regarding the warranty of habitability stated in pertinent part:

A landlord may be held liable to the tenant in damages for breaches of this "implied warranty of habitability."
The plaintiff tenant does not have to prove the landlord had notice of the unsafe condition to establish a breach of the landlord's contractual duty and hold the landlord liable for her injuries. The plaintiff must only show that the unsanitary and unhabitable [sic] conditions existed in the apartment rented to them by the defendant landlords.
[4] It could be argued, for example, that in view of he Court's statement in Trentacost that "the landlord's implied undertaking ... exists independently of his knowledge of any risks," 82 N.J. at 228, 412 A.2d 436, a plaintiff is entitled to have the jury instructed that knowledge of the health risks posed by peeling paint must be imputed to the owner of a multiple dwelling. Such imputation of knowledge of the risks of peeling paint would be similar to the well established principle in the field of product liability law that a manufacturer is assumed to have knowledge of the dangerous propensities of its product. See, e.g., Becker v. Baron Bros., 138 N.J. 145, 152-53, 649 A.2d 613 (1994); Feldman v. Lederle Labs., 97 N.J. 429, 450, 479 A.2d 374 (1984).
[5] Plaintiffs' proposed jury instruction regarding nuisance states in pertinent part:

Nuisance means a condition that is an unreasonable interference with the plaintiff's living conditions and includes a condition that causes injury or harm to the plaintiff.
I instruct you that law of this State is that lead paint on an apartment's interior, or on the exterior in areas accessible to children, is a nuisance. The owner is liable for the damages, if any, caused by this nuisance. If you determine the evidence in this case shows there was lead paint inside the apartment the defendants rented the Ruiz', or upon the exterior, in areas accessible to the plaintiff and that the lead paint was a substantial contributing factor in Jorge's lead poisoning then you must return a verdict for the plaintiff on this claim.