**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1464-15T3

BASHAR SABBAGH,

    Plaintiff-Appellant,

v.

DIVA MULLER,

    Defendant-Respondent.

_____

Submitted December 14, 2016 – Decided April 26, 2017

Before Judges Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-
449-14.

Bashar Sabbagh, appellant pro se.

William J. Pollinger, P.A. and Eckert,
Seamans, Cherin & Mellott, L.L.C., attorneys
for respondent (Mr. Pollinger and
Christopher E. Torkelson, of counsel and on
the brief).

PER CURIAM

    This is a dispute between neighbors who share a common rear

lot line.  The house on plaintiff Bashar Sabbagh's property was

destroyed by fire in 2004.  In 2007, plaintiff received

approvals to build a new house on the lot. In the course of clearing the property for the new construction, a large oak tree plaintiff was attempting to remove fell into defendant Diva Muller's backyard, damaging or destroying several mature shade trees. Defendant apparently sued plaintiff in 2007 to recover for the damage, resulting in plaintiff voluntarily paying defendant $15,000 to resolve the matter.

In 2012 during Superstorm Sandy, a large tree on defendant's property was uprooted and fell into plaintiff's backyard, destroying several recently planted saplings. Plaintiff instituted this action to recover damages he claimed totaled $15,000. Defendant counterclaimed asserting that efforts begun by plaintiff in 2011 to regrade his property had resulted in increased runoff of rainwater and silt flowing from plaintiff's property and causing ponding on defendant's land. She sought injunctive relief and damages of $15,000.

Defendant later submitted an expert report from a landscape architect assessing her damages at $40,000, consisting of $10,000 for the installation of two seepage tanks, twenty new trees costing $24,000 and $6000 in grading and lawn repairs. The detail for the latter figure provided for "[r]emoval of existing silt and soil runoff[,] [l]awn repairs associated with

installation of seepage tanks and tree plantings [a]pproximately 6,000sf."

The matter proceeded to a one-day bench trial before Judge Bachmann. Plaintiff and defendant both testified, as did defendant's expert landscape architect. Plaintiff did not present an expert. The central issue on plaintiff's claim was whether the tree that fell into his yard during Sandy was one of the trees previously damaged in 2007 when his oak toppled onto defendant's property. Plaintiff maintained it was, and thus that defendant had notice of the tree's weakened condition prior to Sandy. Defendant claimed it was not one of the trees that suffered damage in 2007, which she claimed were in another area of her backyard. She further claimed she saw workers cut up the tree uprooted in Sandy and observed that it was perfectly healthy. Neither party presented any proofs on the issue beyond their testimony.

Judge Bachmann found both parties credible, leaving the evidence on the point in equipoise. He accordingly dismissed plaintiff's claim, finding he had failed to carry his burden to prove that defendant breached her duty of reasonable care or that any act of defendant was the proximate cause of her tree's uprooting. See Burke v. Briggs, 239 N.J. Super. 269, 275 (App. Div. 1990).

On the counterclaim, the judge was persuaded by the testimony of both parties that plaintiff's installation of a seepage pit at the rear of his property and reseeding the grass had "alleviated all or almost all of the water infiltration problems." He thus denied any injunctive relief, including installation of seepage pits on defendant's property or the planting of new trees. The judge found, however, based on the testimony and the photographs in evidence, that although defendant's backyard was now dry, it "is silt covered in areas and is no longer level and lush with grass." Relying on the testimony of defendant's expert, the judge found "the area that must be re-graded is 6,000 square feet." Using the expert's calculation of an industry standard of a dollar a square foot for topsoil, seed and fertilizer, the judge awarded defendant $6000 on her counterclaim.

Plaintiff appeals both the dismissal of his complaint and the judgment on defendant's counterclaim, contending the judge's decision was against the weight of the evidence.[1] In addition to

---

[1] Although represented by counsel at the trial level, plaintiff is pro se on appeal. In his brief, he argues that he "incurred damages as a result of the [defendant's] failure to remove damaged trees and therefore [defendant] should be liable for the expenses incurred by the [plaintiff]." As he agrees that <u>Burke v. Briggs</u> is the controlling law, we understand his argument to

(continued)

A-1464-15T3

contesting liability on the counterclaim, plaintiff argues the court erred in assessing damages. He claims the area of lawn to be repaired is less than 6000 square feet, as the expert included repairs to areas disturbed by the installation of seepage pits and trees that the court denied as unnecessary.

Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." In re Trust Created By Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974) (internal quotations and citations omitted)). "Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility. Because a trial court hears the case, sees and observes the witnesses, and hears them testify, it has a better perspective than a reviewing court in

---

(continued)
be directed to the trial court's assessment of the evidence adduced at trial.

evaluating the veracity of witnesses." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citations, internal quotation marks and editing marks omitted)). We exercise our own "original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." Ibid.

Applying those standards here makes clear the trial court's judgment on both plaintiff's claim and defendant's counterclaim must be affirmed. The only evidence the parties presented on the question of whether the tree uprooted in Sandy was one of the ones damaged in 2007 was their own testimony. The judge listened to both. He found defendant "credible, to have testified only to what she was personally aware of and to have refrained from embellishing." The judge found plaintiff "to have been equally credible and equally careful and accurate when testifying." Because the evidence on the critical question was in equipoise, the court correctly concluded plaintiff had failed to succeed in proving his claim. See Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006). We are simply in no position to second guess the judge's careful consideration of the credibility of the parties.

As to the counterclaim, plaintiff relies for his argument on defendant's expert's report, which appears to include in the 6000-square-foot area in need of repair, land required for installation of the seepage pits and trees, which the court rejected as unnecessary. Plaintiff's counsel, however, put this question to defendant's expert directly on cross-examination. Counsel asked the expert, "If there's no seepage tanks required, therefore, there would not be any work to be done with regards to soil remediation or planting seed there, would there?" The expert responded, "No. That's not correct. Because the seepage tanks would be installed where the area is disturbed already."

Later in the cross, counsel again attacked the expert's opinion on the cost of restoring the area damaged by surface water and silt flowing from plaintiff's property. Counsel asked, "And you had no idea what the cost is to put some topsoil and some seed on the bare spots that are shown in the photographs attached to your report because you don't do that work[,] [c]orrect?" The expert replied:

> No. That's not correct. . . . I would say
> that it's not just the bare spots. It's
> along that entire property line. And it's
> the surrounding area of those bare spots
> that need to be feathered into the natural

A-1464-15T3

line. You can't just seed a little patch
and then you'll have a lumpy lawn.[2]

Given the expert's unequivocal testimony, there is "adequate, substantial, credible evidence" in the record to support the damage award on the counterclaim. See Seidman, supra, 205 N.J. at 169.

Because we find no error in the court's findings of fact or conclusions of law made at the conclusion of this bench trial, we affirm, essentially for the reasons expressed by Judge Bachmann in the statement of reasons appended to the November 2, 2015 final order in the case.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The expert had already testified on direct that "a larger, extensive area around [the bare patch depicted on the photos in evidence] has to be re-graded so that it's not lumpy." The expert estimated that in addition to the bare areas depicted in the photos, "[y]ou have to reseed probably [4,000] to 5,000 square feet around that area just to smooth it all out correctly."