SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**John Ross v. Karen Lowitz** (074200) (A-101-13)

**Argued March 17, 2015 -- Decided August 6, 2015**

**PATTERSON, J., writing for a majority of the Court.**

In this appeal, the Court considers whether plaintiffs' claims for private nuisance and trespass, in an action for damages resulting from the migration of home heating oil from an underground oil storage tank on neighboring property, were properly dismissed, and whether plaintiffs can maintain claims as third-party beneficiaries against the insurers which provided homeowners' coverage to the former owner of the neighboring property where the underground storage tank was located..

Shortly after plaintiff John Ross signed a contract to sell his home, he learned of contamination on his property as a result of a leak that previously existed in an underground oil storage tank located on a neighboring property. The prospective purchaser then cancelled the contract, and plaintiffs commenced suit against the current and former owners of the neighboring property, and their respective insurers. After the insurers remediated the contamination on the property, the lawsuit proceeded on the claims for damages against all defendants on theories of negligence, strict liability, private nuisance and trespass, as well as violations of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.

The trial court granted summary judgment in favor of the homeowner defendants on plaintiffs' claims for private nuisance and trespass, finding no evidence that either homeowner engaged in wrongful conduct with respect to the underground storage tank, and that maintenance of the tank did not constitute an abnormally dangerous activity. The court also granted summary judgment in favor of defendant insurers, dismissing plaintiffs' claims for breach of the covenant of good faith and fair dealing contained in the contract, and for nuisance and trespass. Plaintiffs appealed the summary judgments in favor of all defendants. In an unpublished opinion, the Appellate Division affirmed the trial court.

The Court granted plaintiffs' petition for certification. 218 N.J. 273 (2014).

**HELD:** The Court finds no basis for the claims of private nuisance or trespass against the homeowner defendants because there exists no proof of negligence, recklessness, intentional conduct, or the conduct of an abnormally dangerous activity, by these parties. Additionally, the Court declines to expand these causes of action to impose strict liability upon defendants. Plaintiffs cannot proceed with a direct claim against the defendant insurers for breach of the implied covenant of good faith and fair dealing contained in the insurance contracts because they do not hold an assignment of rights from the named insured, and there is no evidence that the named insured or her insurers agreed to recognize plaintiffs as third-party beneficiaries of the insurance contracts.

1. The entry of summary judgment by a trial court is reviewed on appeal under the standards set forth in Rule 4:46-2(c). When there exists no issue of fact, and only a question of law is presented, the legal determinations of the trial court and the Appellate Division are not entitled to any special deference upon appeal. When the grant of summary judgment is based on an issue of law, the appellate court owes no deference to the interpretation of law that flows from the established facts. (p. 12)

2. New Jersey courts analyze a claim for private nuisance under the principles adopted in section 822 of the Restatement (Second) of Torts (1979), which remain unaltered by the Restatement (Third) of Torts. Private nuisance liability derives from unreasonable interference with the use and enjoyment of another's property. Liability is generally imposed where tortious conduct is shown. An intentional but reasonable, or accidental invasion, does not trigger liability. In the absence of fault, strict liability can exist if the defendant is engaged in an abnormally dangerous activity. Section 824 of the Restatement does not provide a basis for strict liability; instead, it

1

only confirms that liability can rest on either an affirmative act, or a failure to act where there exists a duty to do so. (pp. 14-19)

3.  Section 839 of the Restatement, providing a basis for liability where a defendant has failed to abate an artificial condition, requires that the nuisance otherwise be actionable.  Therefore, no claim can exist for failure to abate a nuisance under Section 839 in the absence of a demonstration of fault or the conduct of an abnormally dangerous activity, as required to support a claim of private nuisance.  (pp. 19-21)

4.  New Jersey courts are also guided by the Restatement in addressing claims for trespass.  Liability for trespass exists upon an intentional entry onto another's land, regardless of harm.  Liability can also exist if a defendant recklessly or negligently, or as a result of an abnormally dangerous activity, enters another's land and the entry causes harm.  Liability for a continuing trespass arises with the continued presence on another's land of a structure, chattel or other thing which the actor has tortiously placed there.  A claim for trespass therefore requires a showing of intentional, reckless or negligent conduct, or the conduct of abnormally dangerous activity.  (pp. 21-23)

5.  On the claims of trespass and private nuisance against the homeowner defendants, plaintiffs do not contend, and there is no evidence suggesting, that their damages resulted from negligent, reckless or intentional and unreasonable conduct, or an abnormally dangerous activity conducted by these parties.  The alleged delay by the former homeowner's insurers in remediating the contamination does not constitute a failure to act by the homeowner defendants under Section 824 of the Restatement upon which plaintiffs can sue.  Additionally, absent a showing of fault, defendants cannot be held strictly liable for plaintiffs' damages.  Strict liability, whether for trespass or nuisance, should not be imposed absent intentional conduct or hazardous activity requiring a higher standard of care, or for a compelling policy reason.  Such factors do not exist here.  (pp. 22-25)

6.  When a court determines whether a party is a "third-party beneficiary" of contract rights, the inquiry focuses on whether the parties to the contract intended others to benefit from the contract, or whether the benefit derived arises as an unintended incident of the agreement.  If there is no intent to recognize a right in a third party to obtain performance of the contract, the third party holds no rights or benefits under the contract.  (pp. 26-27)

7.  An insurance company owes a duty of good faith and fair dealing to its insured in the processing of insurance claims.  An insurer's duty of good faith and fair dealing has not been construed in New Jersey to allow a bad-faith claim by one who is not the insured or an assignee of the insured's contract rights.  Public policy likewise does not mandate that the third party be deemed an intended beneficiary of the insurer's contractual duty to its insured.  (pp. 27-28)

8.  Nothing in the record suggests that the parties to the insurance contracts had any intention to make plaintiffs, who were then neighbors of the former homeowner, third-party beneficiaries of the contracts.  Nor does the migration of oil from the insured's property to plaintiffs' property confer third-party beneficiary status on plaintiffs retroactively.  The insurers' duty of good faith and fair dealing therefore extends only to the insured, and not to plaintiffs.  As a result, there exists no basis for plaintiffs' bad faith claims against the insurer defendants.  (pp. 28-29)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE LaVECCHIA, CONCURRING IN PART** and **DISSENTING IN PART,** joined by **JUSTICE ALBIN** and **JUSTICE FERNANDEZ-VINA,** would have permitted plaintiffs to pursue their failure-to-timely-abate nuisance claim based on the asserted unreasonable delay in action by the homeowner's insurers, stating that such a duty should be held to arise based on what is practicable and reasonable.  Justice LaVecchia would hold that since remediation is now a practical and customary remedy for oil spills and related contamination, fairness dictates recognition of a duty to abate the intrusion caused by the spill in a reasonably timely manner.  Justice LaVecchia concurs in the majority's conclusion that plaintiffs are not third-party beneficiaries of the applicable insurance contracts, and have no direct cause of action against the insurance carrier defendants.

**CHIEF JUSTICE RABNER, JUSTICE SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE LaVECCHIA filed a separate, concurring and dissenting opinion, in which JUSTICES ALBIN and FERNANDEZ-VINA join.**

JOHN ROSS and PAMELA ROSS,

    Plaintiffs-Appellants,

        v.

KAREN A. LOWITZ f/k/a KAREN A. SANTORA;
CALVIN HALEY, SUSAN ELLMAN, NEW JERSEY
MANUFACTURERS INSURANCE COMPANY, HIGH
POINT PREFERRED INSURANCE COMPANY,

    Defendants-Respondents.

---

STATE FARM FIRE & CASUALTY COMPANY, a/s/o
KAREN SANTORA and NEW JERSEY
MANUFACTURERS INSURANCE COMPANY a/s/o
KAREN SANTORA,

    Plaintiffs-Respondents,

        v.

SUSAN ELLMAN,

    Defendant-Respondent.

        Argued March 17, 2015 – Decided August 6, 2015

        On certification to the Superior Court,
        Appellate Division.

        Christopher J. Hanlon argued the cause for
        appellants (Hanlon Niemann & Wright,
        attorneys).

        Kevin T. Bright argued the cause for
        respondent Susan Ellman (Marshall, Dennehey,
        Warner, Coleman & Goggin, attorneys).

1

Peter E. Mueller argued the cause for respondent Karen A. Lowitz (Harwood Lloyd, attorneys).

Jacob S. Grouser argued the cause for respondent New Jersey Manufacturers Insurance Company (Hoagland, Longo, Moran, Dunst & Doukas, attorneys).

John M. Bowens argued the cause for respondent State Farm Fire and Casualty Company (Schenck, Price, Smith & King, attorneys; Mr. Bowens and Sandra Calvert Nathans, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

This appeal arises from an action brought by plaintiffs John and Pamela Ross, who allege that their residence was damaged by the migration of home heating oil from a leaking underground oil storage tank located at a neighboring residence. Plaintiffs asserted claims against the current and former owners of the property where the underground storage tank was located, based upon common law theories of negligence, strict liability, private nuisance and trespass, as well as violations of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 (Spill Act). Plaintiffs also sued the insurers who provided homeowners' coverage to the former owners of the neighboring property, asserting a claim for breach of the implied covenant of good faith and fair dealing, in addition to claims for nuisance and trespass.

2

After plaintiffs instituted their action and following their filing of an order to show cause, two of the defendant insurers conducted a remediation of the contamination on plaintiffs' property.  The trial court granted summary judgment dismissing plaintiffs' claims against the defendant property owners and their insurers.  The Appellate Division affirmed that determination.

We consider two issues raised by plaintiffs in this appeal. First, we review the Appellate Division's judgment affirming the trial court's grant of summary judgment dismissing plaintiffs' private nuisance and trespass claims against the residential property owner defendants, whose insurers remediated plaintiffs' property.  We concur with the Appellate Division that no claim for private nuisance or trespass may be premised on this record, which is devoid of proof of negligence, recklessness, intentional conduct, or the conduct of an abnormally dangerous activity by defendant residential property owners.  We decline to expand the private nuisance and trespass causes of action recognized by New Jersey law to impose strict liability in the setting of this case.

We also agree with the Appellate Division that plaintiffs may not assert a bad-faith claim against defendant insurers that provided homeowners' coverage to defendant Karen Lowitz (Lowitz).  Absent an assignment of rights from Lowitz to

3

plaintiffs, or evidence that Lowitz and her insurers agreed to confer on plaintiffs the status of third-party beneficiaries to their insurance contract, plaintiffs have no direct claim against Lowitz's insurers based on an alleged breach of the implied covenant of good faith and fair dealing.

Accordingly, we hold that the trial court properly dismissed plaintiffs' claims and affirm the judgment of the Appellate Division.

I.

On a date that is not revealed by the record, an underground tank intended for the storage of home heating oil was installed on the property designated as 72 Leighton Avenue in Red Bank.  From 1988 to 1999, that property was owned by defendant Susan Ellman (Ellman).  Ellman's homeowner's insurance coverage was underwritten by defendant High Point Preferred Insurance Company (High Point).

In 1999, Ellman sold 72 Leighton Avenue to Lowitz.  Prior to closing, Lowitz arranged for the oil storage tank on the property to be tested by an environmental consultant.  The consultant found no leakage in the storage tank.

Lowitz owned 72 Leighton Avenue from 1999 to October 2003. Until February 2003, Lowitz's homeowner's insurance coverage was issued by defendant State Farm Fire and Casualty Company (State Farm).  Beginning on March 1, 2003, Lowitz obtained her

4

homeowner's insurance coverage from defendant New Jersey Manufacturers Insurance Company (NJM).

In August 2003, Lowitz entered into a contract to sell 72 Leighton Avenue to defendant Calvin Haley (Haley). Prior to closing, Lowitz arranged for an environmental consultant to inspect the underground storage tank. The consultant located a leak. Lowitz notified State Farm and NJM, and the insurers arranged and paid for the remediation of the leaked oil on Lowitz's property.

In 2004, plaintiff John Ross bought the residential property designated as 66 Leighton Avenue. Plaintiffs contend that John Ross was unaware that the oil tank on Lowitz's property had leaked when he bought the property. According to plaintiffs, John Ross first learned in 2006 that the oil had contaminated Lowitz's property and an adjoining property, 70 Leighton Avenue, but he did not learn at that time that oil had migrated to his own property.

In late 2006, plaintiff John Ross put his property up for sale and, in May 2007, signed a contract with a prospective buyer to sell the property for a purchase price of $325,000. A week after the contract was signed, an environmental consultant retained by State Farm and NJM informed plaintiff that the oil had migrated to his property. The prospective purchaser of the

property cancelled the contract, and John Ross continued to own the property.[1]

After an environmental consultant retained by High Point took samples from their property, plaintiffs retained counsel. In August 2007, plaintiffs' counsel sought a commitment from State Farm and NJM that the insurers would promptly arrange for remediation of the oil on John Ross's property and for the payment of plaintiffs' expenses incidental to that remediation. In October 2007, State Farm and NJM agreed to pay $20,000 toward the replacement of plaintiffs' deck, pool and retaining wall, in the event that remediation on the property necessitated the destruction of those structures. According to plaintiffs, State Farm and NJM were not responsive to plaintiffs' counsel's repeated request that they commence remediation and pay plaintiffs' expenses. Plaintiffs further assert that State Farm and NJM delayed the remediation until after plaintiffs filed their lawsuit and order to show cause.

In September 2008, plaintiffs commenced this action in the Law Division. In an amended complaint filed shortly thereafter in October 2008, plaintiffs named as defendants, Lowitz, Ellman,

---

[1] In 2007, plaintiffs John Ross and Pamela Ross were married, and both lived on the property at issue following their marriage. According to plaintiffs' complaint and other documents in the record, plaintiff John Ross remained the sole owner of 72 Leighton Avenue after plaintiffs' marriage.

State Farm and NJM.[2]  Against all defendants, they pled claims based on negligence, strict liability, nuisance, trespass and Spill Act liability.  Plaintiffs' nuisance and trespass claims were premised on the continued presence of hazardous substances leaked from the homeowner defendants' underground storage tank. They did not allege in their original or amended complaint a nuisance or trespass claim for damages resulting from the delay that occurred before the property was remediated.

Plaintiffs also asserted claims against the insurers. Plaintiffs claimed that they were third-party beneficiaries of the insurance contracts between the insurers and their insureds, and alleged that the insurers violated the covenant of good faith and fair dealing.  Plaintiffs sought remediation, damages for the alleged loss of the use of their home, and damages for the alleged diminution in the value of their property.

In July 2009, plaintiffs filed an order to show cause before the trial court.  Shortly thereafter, plaintiffs, State Farm and NJM entered into an agreement, memorialized in a consent order entered by the trial court, regarding the terms of the remediation of plaintiffs' property.[3]  Thereafter,

---

[2] Plaintiffs also named as defendants Haley and High Point, but their claims against those defendants were dismissed and are not the subject of this appeal.

[3] The consent order required the insurers to restore the property to its former condition following remediation, pay plaintiffs

7

environmental consultants retained by State Farm and NJM excavated portions of plaintiffs' property to remove the contamination. That process took approximately seven weeks and was completed in late October 2009. In August 2010, the New Jersey Department of Environmental Protection (DEP) issued a "No Further Action Letter," pursuant to N.J.S.A. 58:10B-13.1.

State Farm, NJM, Ellman, and Lowitz moved for summary judgment. The trial court granted all defendants' summary judgment motions. With respect to State Farm and NJM, the trial court held that because plaintiffs were not parties to the insurance contracts at issue, they had no standing to recover the policy proceeds, and that public policy did not mandate that a third party be deemed the intended beneficiary of the insurance company's contractual duty to its insured to act in good faith with respect to a settlement. Accordingly, the trial court dismissed plaintiffs' claims against State Farm and NJM.

With respect to Ellman and Lowitz, the trial court reasoned that there was no evidence that either homeowner acted negligently with respect to the maintenance of the oil tank on the property that each defendant successively owned. The court also concluded that the maintenance of the oil tank did not

---

approximately $2000 per month for alternative living arrangements during portions of the remediation involving excavation, and pay plaintiffs approximately $21,000 in lieu of restoration of their pool, deck and retaining wall.

constitute an abnormally dangerous activity. It found that neither plaintiffs' private nuisance claims, nor their trespass claims, could be maintained in the setting of this case.[4]

Plaintiffs appealed the trial court's grant of summary judgment. In an unpublished opinion, the Appellate Division affirmed the trial court's determination. Analyzing the record in accordance with section 822 of the <u>Restatement (Second) of Torts</u> (1979) (<u>Restatement</u>), the panel agreed with the trial court that liability for private nuisance cannot be imposed without proof of the defendants' negligence, recklessness or intentional act, unless defendants have conducted an abnormally hazardous activity that warrants the imposition of strict liability. It determined that the maintenance of an underground tank for the storage of home heating oil does not constitute such an abnormally hazardous activity. The panel also concurred with the trial court's dismissal of plaintiffs' third-party claims against State Farm and NJM. It held that the claims were properly dismissed because plaintiffs were not assigned rights under the insurance contracts between the insurers and their insured and there was no evidence that the parties to those

---

[4] For reasons that are not disclosed in the record, plaintiffs abandoned their Spill Act and strict liability claims after the remediation of their property was completed and the DEP issued its No Further Action Letter.

9

contracts intended to confer a direct right of action on plaintiffs.

We granted certification. 218 N.J. 273 (2014).

## II.

Plaintiffs allege that the trial court and Appellate Division misconstrued their private nuisance claim because they did not address the existence of a claim under section 824 of the Restatement based on defendants' failure to abate a private nuisance. Plaintiffs contend that section 824 creates a cause of action that is separate and independent of a cause of action under section 822 of the Restatement. Plaintiffs also assert that the Court should recognize a related claim based on failure to abate the nuisance within a reasonable period of time. They contend, for the first time on appeal, that defendants' conduct constituted a continuing trespass. Plaintiffs also contend that they are third-party beneficiaries of the insurance contracts between State Farm and NJM and their insured and that there is a special relationship between plaintiffs and the insurers in the factual setting of this case.

Ellman and Lowitz argue that because the storage of home heating oil is not unreasonably dangerous, and there is no evidence that they acted intentionally, recklessly or negligently to create a private nuisance, plaintiffs cannot establish a claim under section 822 of the Restatement. They

10

argue that plaintiffs' reliance on section 824 of the Restatement is misplaced because liability cannot be imposed pursuant to Restatement section 824 in the absence of a cause of action for nuisance under section 822 of the Restatement. Ellman and Lowitz contend that there is no evidence to support the assertion that defendants unreasonably delayed the abatement of the alleged nuisance. Lowitz additionally asserts that if she did owe a duty to plaintiffs, she discharged that duty with due care by notifying her insurers of their claim and that she had no authority to control their actions.

State Farm and NJM argue that in the absence of an assignment of rights under their contracts with their insured, or an intent on the part of the parties to the contract to designate plaintiffs as third-party beneficiaries of the contract, plaintiffs may not pursue a bad faith claim against the insurers. They contend that plaintiffs had no "special relationship" with the insurers that would justify the imposition of liability for a breach of the covenant of good faith and fair dealing. State Farm also counters plaintiffs' contention that in the absence of a direct claim, no party will be responsible for the damage to their home. State Farm notes that it recognized its obligation to remediate and restore plaintiffs' property and that it conducted that remediation and restoration to the satisfaction of DEP and at no cost to

11

plaintiffs.  It represents that plaintiffs were fully compensated for their relocation costs during the remediation process.

III.

A.

We review the trial court's entry of summary judgment in accordance with the standard set forth in Rule 4:46-2(c).  State v. Perini Corp., 221 N.J. 412, 425 (2015) (citations omitted). That standard compels a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  When there is no issue of fact, and only a question of law remains, an appellate court reviews that question de novo; the legal determinations of the trial court and Appellate Division are not entitled to any special deference.  Gere v. Louis, 209 N.J. 486, 499 (2012) (citing Raspa v. Office of Sheriff, 191 N.J. 323, 334 (2007); Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001); Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995)).  When "summary judgment is based on an issue of law, we owe no deference to an interpretation of law that flows from established facts."

12

Perini Corp., supra, 412 N.J. at 425 (citing Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013)).

On this record, there is no genuine issue of material fact with respect to both the private nuisance and trespass claims against all defendants or plaintiffs' assertion of a third-party bad faith claim against State Farm and NJM. Accordingly, we review de novo the trial court's legal determinations on both issues.

B.

Plaintiffs' private nuisance and trespass claims are premised on the allegation that home heating oil from an underground storage tank at 72 Leighton Avenue migrated to their nearby property.[5] They assert that by virtue of the continued presence of oil that migrated from the storage tank, defendants should be held liable for private nuisance and for trespass.[6]

---

[5] Although plaintiffs do not specify in their complaint that the nuisance they allege is a private nuisance rather than a public nuisance, it is clearly the former. See In re Lead Paint Litigation, 191 N.J. 405, 424-25, 426 n.7 (2007) (noting distinction between private nuisance and public nuisance); see also Malhame v. Borough of Demarest, 162 N.J. Super. 248, 259-60 (Law Div. 1978), appeal dismissed, 174 N.J. Super. 28 (App. Div. 1980).

[6] The Spill Act imposes strict, joint and several liability upon dischargers. See N.J.S.A. 58:10-23.11g(c)(1) ("[A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."); see also Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 377-79

13

A cause of action for private nuisance derives from the defendant's "unreasonable interference with the use and enjoyment" of the plaintiff's property.  Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959); James v. Arms Tech., Inc., 359 N.J. Super. 291, 329 (App. Div. 2003).  When analyzing nuisance claims, "our courts are guided by the principles set forth in the Restatement (Second) of Torts." Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 389 (App. Div.) (citing Ventron Corp., supra, 94 N.J. at 491-92), certif. denied, 209 N.J. 96 (2011); see Birchwood Lakes Colony Club v. Borough of Medford Lakes, 90 N.J. 582, 592 (1982); James, supra, 359 N.J. Super. at 329-30.

Two Restatement sections, sections 822 and 824 of the Restatement, are central to our analysis.[7]  Restatement section 822 identifies the elements of a cause of action for private nuisance:

> One is subject to liability for a private
> nuisance if, but only if, his conduct is a
> legal cause of an invasion of another's
> interest in the private use and enjoyment of
> land, and the invasion is either

---

(2015) (discussing Spill Act claims).  The Spill Act claim that plaintiffs pled, but declined to pursue on appeal, did not preclude their common law nuisance and trespass claims.  See N.J.S.A. 58:10-23.11v; State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 493 (1983).

[7] These standards are unaltered by the Restatement (Third) of Torts.  See Restatement (Third) of Torts, parallel table 2 (2005).

14

> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

[Restatement § 822.]

Our courts have adopted the standard of Restatement section 822 to assess liability for private nuisance. See Birchwood Lakes, supra, 90 N.J. at 592 (adopting standard of Restatement section 822 in case involving wastewater discharge); Burke v. Briggs, 239 N.J. Super. 269, 272-73 (App. Div. 1990) (applying Restatement section 822 as standard governing private nuisance claim arising from damage due to tree falling on neighbor's property).

Under section 822 of the Restatement, liability for private nuisance may be imposed if the nuisance arose from intentional and unreasonable conduct. See, e.g., Associated Metals & Minerals Corp. v. Dixon Chem. & Research, Inc., 82 N.J. Super. 281, 287-89, 301-03 (App. Div. 1963) (holding open truck transport and piling of sulfur that deposited sulfur dust on nearby property despite warnings to resolve issue constituted intentional and unreasonable conduct within meaning of Restatement section 822), certif. denied, 42 N.J. 501 (1964).

15

In the absence of evidence of the defendant's fault, strict liability may be imposed in a private nuisance claim if the defendant is engaged in an abnormally dangerous activity. Burke, supra, 239 N.J. Super. at 272-73; see also T & E Indus., Inc. v. Safety Light Corp., 123 N.J. 371, 394-95 (1991) (holding that "defendant's processing, handling, and disposal" of radium in urban setting is "abnormally-dangerous activity" subject to strict liability); Ventron, supra, 94 N.J. at 493 (holding that disposing of "mercury and other toxic wastes" constitutes an "abnormally dangerous activity"). Outside that narrow setting, however, an "intentional but reasonable" or "entirely accidental" invasion does not trigger liability under a private nuisance theory. Restatement § 822 comment a. As the Restatement drafters explained, by virtue of the evolution of the law of private nuisance, "an actor is no longer liable for accidental interferences with the use and enjoyment of land but only for such interferences as are intentional and unreasonable or result from negligent, reckless or abnormally dangerous conduct." Id. § 822 comment b. Accordingly, "[l]iability for an invasion of interests in the use and enjoyment of land now depends upon the presence of some type of tortious conduct." Id. § 822 comment c.

That essential limitation on the law of private nuisance was underscored in Birchwood Lakes, supra, in which this Court

16

limited section 822 of the Restatement to settings involving intentional, reckless or negligent conduct, or an abnormally dangerous activity:

> Private nuisance is but one possible theory for recovery of damages caused by the invasion of one's interest in the private use and enjoyment of land. That interest may be invaded by more than one type of conduct, i.e., the conduct may be intentional, it may be unintentional but caused by negligent or reckless conduct, or it may result from an abnormally dangerous activity for which there is strict liability.
>
> [90 N.J. at 591-92 (footnote omitted) (adopting Restatement section 822 analysis).][8]

Section 824 of the Restatement, on which plaintiffs rely, does not expand private nuisance claims into settings in which there is no showing of fault and no abnormally dangerous activity being conducted. Rather, it confirms that two categories of conduct, an affirmative act and a failure to act in circumstances in which the defendant has a duty, can give rise to a claim for private nuisance:

---

[8] Smith, supra, 421 N.J. Super. at 379, 389-90, does not support the proposition that a nuisance claim can be maintained in the absence of evidence of fault. There, although the jury declined to find that the plaintiffs' damage -- stray voltage passing through the ground on their residential property -- resulted from the defendant utility's negligence, it suggested that a utility's continued conduct in causing the stray voltage to be present on the plaintiffs' property constituted an intentional act. Id. at 379, 389. This case does not raise the issue addressed by the Appellate Division in Smith, and we do not consider that issue.

17

The conduct necessary to make the actor liable for either a public or private nuisance may consist of

(a) an act; or

(b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.

[Restatement § 824.]

This Court has adopted this section of the Restatement. See Birchwood Lakes, supra, 90 N.J. at 592 (adopting Restatement section 824 analysis); accord S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot., 254 F. Supp. 2d 486, 504 (D.N.J. 2003) (applying New Jersey law).

As its commentary explains, section 824 of the Restatement authorizes the imposition of liability for a failure to satisfy a duty, as well as the commission of an affirmative act:

One is ordinarily subject to no liability to another merely because he has failed to take positive action to prevent another from being harmed. There are, however, certain circumstances under which the law imposes a duty on a person to take positive action for the protection of another and subjects him to liability if he fails to meet the standard of action required in the particular case.

[Restatement § 824 comment e (citations omitted).]

Thus, while Restatement section 824 confirms that a breach of an affirmative duty may give rise to liability in appropriate

18

settings, it does not give rise to a strict liability claim outside of the abnormally dangerous activity setting recognized by section 822 of the Restatement.

The principle that limits private nuisance claims under section 822 of the Restatement to cases involving the defendant's fault or abnormally dangerous activity also limits the reach of section 839 of the Restatement, the provision at the core of our dissenting colleagues' analysis. Plaintiffs did not invoke section 839 before the trial court or on appeal. More importantly, that provision does not revive plaintiffs' nuisance claims in the setting of this case.

Section 839 of the Restatement governs a claim that a defendant is liable for a private nuisance because he or she failed to abate an artificial condition:

> A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
>
> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
>
> (b) he knows or should know that it exists without the consent of those affected by it, and
>
> (c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.

19

[Restatement § 839 (emphasis added).]

Significantly, section 839 of the Restatement imposes liability for failure to abate a nuisance only "if the nuisance is otherwise actionable." The commentary to Restatement section 839 defines this language to "mean[] that all other elements necessary to liability under the rule stated in § 822 . . . must be present in addition to the breach of duty specified in this Section." Restatement § 839 comment g. Thus, in the absence of a showing of fault or the conduct of an abnormally dangerous activity that would support a private nuisance claim under section 822 of the Restatement, plaintiffs have no claim under section 839 of the Restatement.

Our dissenting colleagues contend that there is ambiguity in Restatement section 839 by virtue of an illustration provided in its commentary that postulates two alternative scenarios involving contamination by a leaking underground storage tank. Post at __ (slip op. at 11-13) (citing Restatement § 839 comment f, illustration 1-2). Our colleagues acknowledge that this case more closely resembles the first scenario presented in comment f, in which no liability is imposed where the underground storage tank leaked "[w]ithout [the tank owner's] knowledge or negligence," "because it would not be practicable" for the owner to remove the oil from his or her neighbor's land. Post at __ (slip op. at 12). They argue, however, that the illustration in

20

the Restatement is outdated because with modern technology, migrating home heating oil can be remediated. Post at __ (slip op. at 13). Whether or not the Restatement's drafters should update the illustration, the principle of Restatement section 839 remains the same: there is no liability under that provision unless the defendant's conduct was "actionable" within the meaning of section 822 of the Restatement.

Our courts also apply the Restatement's standard of liability where a plaintiff pursues a trespass claim. See Siddons v. Cook, 382 N.J. Super. 1, 11-12 (App. Div. 2005); Burke, supra, 239 N.J. Super. at 272-73. A defendant is liable in trespass for an "intentional[]" entry onto another's land, regardless of harm. Restatement § 158. A defendant is also liable if he "recklessly or negligently, or as a result of an abnormally dangerous activity enters" onto another's land, and the entry causes harm. Id. § 165. Liability for a "continuing trespass" arises with the "continued presence" on another's "land of a structure, chattel, or other thing which the actor has tortiously placed there." Id. § 161(1) & comment b. Importantly, the placement of the object on the plaintiff's land must be a "tortious[]" act, in that the conduct "subject[s] the actor to liability under the principles of the law of Torts," id. § 161 comment a, defined as conduct that is intentional, negligent, or abnormally dangerous, id. § 6 comment a.

21

Accordingly, a defendant is not liable in trespass for "an unintentional and non-negligent entry on land in the possession of another," regardless of the harm done. Id. § 166. The commentary confirms that strict liability is eliminated except for abnormally dangerous activities. Id. § 166 & comment b.[9] Like a private nuisance claim under section 822 of the Restatement, a cause of action for trespass requires a showing of intentional, reckless or negligent conduct, or the conduct of abnormally dangerous activity. Id. §§ 165-66.

In short, "[strict] liability without fault should not be imposed, whether that activity be classified as a nuisance or a trespass, absent intentional or hazardous activity requiring a higher standard of care or, as a result of some compelling policy reason." Burke, supra, 239 N.J. Super. at 273; see also Ruiz ex rel. Ruiz v. Kaprelian, 322 N.J. Super. 460, 472-73 (App. Div. 1999). Instead, "regardless of the analysis one might urge and the consequent label attached," the outcome "should logically depend on whether the offending landowner somehow has made a negligent or unreasonable use of his land when compared with the rights of the party injured on the adjoining lands." Burke, supra, 239 N.J. Super. at 274. Both

---

[9] The Restatement (Third) of Torts did not alter this standard. See Restatement (Third) of Torts, supra, parallel table 2.

22

of the causes of action at issue -- a claim for private nuisance and a claim for trespass -- are governed by that limiting principle.

Here, plaintiffs do not contend that their damages derive from negligent, reckless, or intentional and unreasonable conduct by Ellman or Lowitz. Moreover, there is nothing in the summary judgment record that would support such a claim. There is no suggestion that the underground oil storage tank leaked during the period in which Ellman owned the property at 72 Leighton Avenue. Lowitz arranged for the tank to be tested before she purchased the property in 1999, and no leak was detected at that time. When Lowitz contracted to sell the property four years later, she again arranged for a consultant to test the tank, and promptly notified her insurers when the consultant detected a leak in the underground storage tank. These homeowners' actions do not support an allegation of an intentional tort, recklessness or negligence, and no such allegation is premised on their conduct.

Relying exclusively on section 824 of the Restatement, plaintiffs argue that Ellman or Lowitz should be held liable on a theory of private nuisance or trespass because of delays in the defendant insurers' remediation of the contamination on plaintiffs' property, i.e. defendants' "failure to act." However, because plaintiffs cannot show fault or the conduct of

23

an abnormally dangerous activity on this record, as required by section 822 of the Restatement, they do not have a viable theory of liability under Restatement section 824.  In the absence of an abnormally dangerous activity, the homeowner defendants cannot be held strictly liable for damages allegedly sustained by plaintiffs as a consequence of the delay before their property was excavated and remediated.

The same limitations govern section 839 of the Restatement, which was not relied on by plaintiffs.  Because the record is devoid of any allegation that Lowitz acted negligently, recklessly, or intentionally, section 839 does not provide a nuisance remedy in this case.  Moreover, Lowitz took the "practicable" step available to her when she promptly contacted her insurers to advise them of the presence of the leaking oil tank on her property.[10]

Plaintiffs' allegations present a sympathetic argument.  But under well-settled law, they do not provide a basis for a claim for private nuisance under sections 822, 824, or 839 of the Restatement, or for trespass pursuant to sections 158, 161, or 165 of the Restatement, against the defendants.  The trial

_____

[10] Notwithstanding State Farms' argument regarding the significance of the DEP's "No Further Action Letter," we do not rely on the determination of the DEP in our analysis of plaintiffs' nuisance and trespass claims.

24

court correctly granted summary judgment dismissing plaintiffs' private nuisance and trespass claims.

                                    C.

We next review the trial court's grant of summary judgment dismissing plaintiffs' third-party claims against State Farm and NJM, premised on an alleged breach of the covenant of good faith and fair dealing. That review requires us to determine whether plaintiffs should be considered third-party beneficiaries of the insurance contracts under which State Farm and NJM provided homeowners' coverage to Lowitz.

As a general rule, an individual or entity that is "a stranger to an insurance policy has no right to recover the policy proceeds." Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co., 320 N.J. Super. 546, 553-54 (App. Div. 1999) (citing Biasi v. Allstate Ins. Co., 104 N.J. Super. 155, 159-60 (App. Div.), certif. denied, 53 N.J. 511 (1969)). By virtue of an assignment of rights, a third party may assert a bad-faith claim against an insurer. Murray v. Allstate Ins. Co., 209 N.J. Super. 163, 165, 168-71 (App. Div. 1986), appeal dismissed, 110 N.J. 293 (1988); Biasi, supra, 104 N.J. Super. at 159-60. In the absence of such an assignment, plaintiffs assert that they are third-party beneficiaries to the insurance contracts executed by Lowitz and her insurers, State Farm and NJM, and

that the insurers breached that duty by delaying the remediation of plaintiffs' residence.

When a court determines the existence of "third-party beneficiary" status, the inquiry "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259 (1982); see also Rieder Cmtys. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 222 (App. Div.), certif. denied, 113 N.J. 638 (1988). As the former Court of Errors and Appeals stated,

> [t]he determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract. . . . Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.
>
> [Borough of Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 76-77 (E. & A. 1940).]

If there is no intent to recognize the third party's right to contract performance, "then the third person is only an incidental beneficiary, having no contractual standing." Broadway Maint., supra, 90 N.J. at 259 (citing Standard Gas

26

Power Corp. v. New England Cas. Co., 90 N.J.L. 570, 573-74 (E. & A. 1917)).

This Court has recognized an insurance company's duty of good faith and fair dealing to its insured in the processing of insurance claims:

> In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay. . . . [L]iability may be imposed for consequential economic losses that are fairly within the contemplation of the insurance company.
>
> [Pickett v. Lloyd's, 131 N.J. 457, 481 (1993).]

An insurer's duty of good faith and fair dealing, however, has never been applied in New Jersey to recognize a bad-faith claim by an individual or entity that is not the insured or an assignee of the insured's contract rights. As an Appellate Division panel has observed,

> "[t]he right of the assured to recover against the insurer for its failure to exercise good faith in settling a claim within the limits of a liability policy . . . is predicated upon the potential damage to the assured in being subjected to a judgment in excess of her policy limits and the consequent subjection of her assets to the satisfaction of such judgment. The damage is peculiarly to the assured by reason of a breach of an implied condition of the policy contract. The injured third party is a stranger in that sense. Moreover, public policy does not mandate that the injured party in the accident should be

27

> deemed the intended beneficiary of the company's contractual duty to its policyholder to act in good faith regarding settlement."
>
> [Murray, supra, 209 N.J. Super. at 168-69 (quoting Biasi, supra, 104 N.J. Super. at 156-57).]

Accord Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434, 453-54 (D.N.J. 2002) (holding that unless insured has assigned contract rights, third party may not proceed against insurer on bad faith claim).

We concur with the reasoning of those courts and apply the principle of their decisions to this case. It is a fundamental premise of contract law that a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement. See Broadway Maint., supra, 90 N.J. at 259; Brooklawn, supra, 124 N.J.L. at 76-77. Here, there is no suggestion in the record that the parties to the insurance contracts at issue had any intention to make plaintiffs, then the neighbors of the insured, a third-party beneficiary of their agreements. Nor does the migration of oil from Lowitz's property to plaintiffs' residence retroactively confer third-party beneficiary status on plaintiffs. The insurers' duty of good faith and fair dealing in this case extended to their insured, not to plaintiffs.

There is, in short, no basis for plaintiffs' bad-faith claims against State Farm and NJM, as insurers of Lowitz in this

28

case.  The trial court properly granted summary judgment dismissing those claims.

## IV.

The judgment of the Appellate Division is affirmed.


CHIEF JUSTICE RABNER, JUSTICE SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE LaVECCHIA filed a separate, concurring and dissenting opinion, in which JUSTICES ALBIN and FERNANDEZ-VINA join.

JOHN ROSS and PAMELA ROSS,

    Plaintiffs-Appellants,

        v.

KAREN A. LOWITZ f/k/a KAREN
A. SANTORA; CALVIN HALEY,
SUSAN ELLMAN, NEW JERSEY
MANUFACTURERS INSURANCE
COMPANY, HIGH POINT PREFERRED
INSURANCE COMPANY,

    Defendants-Respondents.

_____

STATE FARM FIRE & CASUALTY
COMPANY, a/s/o KAREN SANTORA
and NEW JERSEY MANUFACTURERS
INSURANCE COMPANY a/s/o KAREN
SANTORA,

    Plaintiffs-Respondents,

        v.

SUSAN ELLMAN,

    Defendant-Respondent.

    JUSTICE LaVECCHIA, concurring in part and dissenting in part.

    The common law on tort liability is not static.  Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 435 (1993).  With changes in social expectations, values, and public policy, the common law

1

evolves to keep pace with what we expect of one another. Ibid. This is not new, but rather a benefit of the common law long recognized by this Court. We have said there is a "'power of growth . . . inherent in the common law'" and accordingly it "cannot be immutable or inflexible." Ibid. (quoting State v. Culver, 23 N.J. 495, 506, cert. denied, 354 U.S. 925, 27 S. Ct. 1387, 1 L. Ed. 2d 1441 (1957)).

In this matter, the majority has adopted an inflexible posture toward the development of nuisance law. Plaintiffs John and Pamela Ross claim that they experienced an extended period of disruption in the use and enjoyment of their property as a result of an oil leak that migrated from an underground storage tank located on a neighboring property. Although the insurers of that neighboring property took responsibility for performing the individual defendants' cleanup process, plaintiffs claim that the process took an unreasonable amount of time and seek to hold the individual defendants liable for the untimely failure to abate. For the reasons that follow, I would have permitted plaintiffs to pursue their failure-to-timely-abate nuisance claim that is built on a theory of an unreasonable delay in action by the landowner's agents. I therefore dissent from that portion of the majority's judgment.

I.

As thus far developed, the facts related to the length of

2

time taken during the cleanup of plaintiffs' property deserve highlighting.

An oil leak originated from the underground storage tank (UST) located at 72 Leighton Avenue in Red Bank, New Jersey. At the time the leak was discovered, that property was owned by defendant Karen Lowitz, who had purchased the property in 1999 from defendant Susan Ellman.  While the property was possessed by Ellman, it was insured by defendant High Point Preferred Insurance Company (High Point).  Upon Lowitz's purchase, the property became insured through defendant State Farm Fire and Casualty Company (State Farm).  In March 2003, Lowitz switched insurers to defendant New Jersey Manufacturers Insurance Company (NJM).

The oil leak was discovered in 2003, after Lowitz had entered into an agreement to sell the property to Calvin Haley.[1] Prior to closing, Advanced Tank Services, Inc., tested the UST on the property and found oil leakage.  Upon being notified of the leak, defendant insurance carriers, State Farm and NJM, undertook financial responsibility for remediation of 72 Leighton Avenue and affected properties.

---

[1] Although there is a factual question based on contradictory opinions as to when the leak started, there is evidence that the leak originated at 72 Leighton as early as January 1993 -- "[t]he 95% confidence range for the mean from the supporting calculation is April 1990 to September 1995," according to an expert report filed in this matter.

Plaintiff John Ross purchased the single-family home located at 66 Leighton Avenue on July 1, 2004. When John purchased the property in 2004, he was unaware of any contamination on his property. In May 2007, a week after signing a contract for the sale of his home for $325,000, John learned that oil from the aforesaid oil leak had migrated onto his property. As a result, the prospective buyers cancelled their contract to purchase the 66 Leighton Avenue property.[2] John married plaintiff Pamela Ross in 2007, and the couple continued to reside at 66 Leighton Avenue.

In July 2007, an environmental consultant hired by High Point requested access to plaintiffs' property to take soil and groundwater samples.

In August 2007, plaintiffs' attorney sent a letter to the representative of NJM and State Farm detailing disruptions to plaintiffs' use of the property as a result of the oil leak from 72 Leighton Avenue.

In October 2007, State Farm and NJM tentatively agreed to pay $20,000 to compensate plaintiffs for removal or destruction of a retaining wall, deck, and above-ground pool that was anticipated to occur during the remediation process.

---

[2] Plaintiffs eventually sold the property for $190,000 in a short sale in 2011 after cleanup was complete.

4

Plaintiffs' attorney then sent multiple letters to the representative of State Farm and NJM explaining the harm suffered by plaintiffs as a result of the leak, many of which did not receive a response.

Ultimately, on August 17, 2009, after the filing of the present action, a consent order was entered in which State Farm and NJM agreed to provide plaintiffs with all documentation regarding the contamination and cleanup, to pay plaintiffs $2,075 per month for their carrying costs for 66 Leighton during times that the cleanup involved excavation or use of heavy equipment on their property, and to restore the property to its former condition with the exception of paying plaintiffs $21,500 in lieu of restoring plaintiffs' pool, deck, retaining wall, and electric improvements.

A remediation excavation occurred between September 3, 2009, and October 28, 2009 -- a period of time lasting approximately sixty days and occurring after more than two years had elapsed from the date that soil samples had been taken by defendants' agents. In August 2010, the New Jersey Department of Environmental Protection issued a "No Further Action Letter" to plaintiffs, informing them that remediation of the oil contamination on their property was complete. Thereafter, a "No Further Action Letter" encompassing all of the contamination from the oil tank was issued for all affected properties in

5

October 2011.

                                II.

"Determining the scope of tort liability has traditionally been the responsibility of the courts." Hopkins, supra, 132 N.J. at 439 (citing Kelly v. Gwinnell, 96 N.J. 538, 552 (1984)). In determining whether to recognize a duty of care, we look at

> whether the imposition of such a duty
> satisfies an abiding sense of basic fairness
> under all of the circumstances in light of
> considerations of public policy. That inquiry
> involves identifying, weighing, and balancing
> several factors -- the relationship of the
> parties, the nature of the attendant risk, the
> opportunity and ability to exercise care, and
> the public interest in the proposed solution.
> The analysis is both very fact-specific and
> principled; it must lead to solutions that
> properly and fairly resolve the specific case
> and generate intelligible and sensible rules
> to govern future conduct.
>
> [Ibid. (emphasis added) (citations
> omitted).]

Applying those principles in Hopkins, supra, this Court imposed upon "a real estate broker . . . [the] duty to ensure through reasonable inspection and warning the safety of prospective buyers and visitors who tour an open house." Id. at 448. In doing so, the Court declined to fit the situation into a "common law classification" but, instead, focused on the following inquiry: "whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the broker of a general duty to

6

exercise reasonable care in preventing foreseeable harm to its open-house customers is fair and just." Id. at 438. The Court then answered that question in the affirmative, highlighting the relationship between the broker, homeowner, and invitees; the foreseeability of injury to guests in an unfamiliar home; and the public interest furthered by the result. Id. at 439-48.

This Court has permitted a plaintiff to develop previously unrecognized causes of action consistent with evolving notions of fairness and justice when the exercise of reasonable care would prevent foreseeable harm. Thus, the common law of tort has evolved to address circumstances that may not have been advanced in the past but were deserving of expansion. See, e.g., Olivo v. Owens-Illinois, Inc., 186 N.J. 394 (2006).

Relying on the principles set forth in Hopkins, the Olivo Court found that a defendant-employer, who "owed a duty to workers on its premises for the foreseeable risk of exposure to friable asbestos and asbestos dust," also "owed a duty to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on contaminated clothing." Id. at 401-02, 404-05. The Court noted that the question of whether to impose such a duty was "a question of foreseeability of the risk of harm to that individual or identifiable class of individuals." Id. at 403.

7

After "weighing and balancing the relationship of the parties, the nature of the risk and how relatively easy it would have been to provide warnings to workers," the Court concluded that imposition of that duty was foreseeable and consistent with public policy and the prevention of harm.  Id. at 405.

Those cases exemplify a fundamental principle of our common law, which is "that it can, and must, change when change is appropriate."  State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 534 (2001).  The question here is whether there is a need for development or change in the recognized tort of nuisance in this state.

## III.

Generally, nuisance law in New Jersey has been "guided by the principles set forth in the Restatement (Second) of Torts [(Restatement)]."  Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 389 (App. Div.), certif. denied, 209 N.J. 96 (2011); see also Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 592 (1982).  But we are not bound to follow the Restatement as if it provides a statutory prescription.  See, e.g., P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 174-75 (2008) (noting Restatement's role as guide for relevant policies or interests that "might bear on the [choice of law] analysis"); Perez v. Wyeth Labs., Inc., 161 N.J. 1, 14-15 (1999) (noting that Restatement serves complementary role in

8

state's own development of common law). It is a guide for our consideration of principles of or about social responsibility that we in New Jersey choose to respect.

Section 822 of the Restatement outlines the "General Rule" for liability for a private nuisance:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a)  intentional and unreasonable, or
>
> (b)  unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
>
> [Restatement (Second) of Torts § 822 (1979).]

The Restatement also advises that an actor may be liable for a private nuisance if he or she engages in the following conduct: (1) "an act; or" (2) "a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate . . . the invasion of the private interest." Id. § 824 (emphasis added).

In conjunction, the sections support that defendants can be held liable for intentionally and unreasonably, or negligently or recklessly,[3] "fail[ing] to act under circumstances in which

---

[3] Defendants could be held liable if they invaded plaintiffs' private interests in violation of the principles governing

9

[they were] under a duty to take positive action to prevent or abate . . . the invasion of [another's] private interest" in the use and enjoyment of his or her land, see ibid., if their conduct was the "legal cause" of that invasion, see id. § 822.

Comment (e) to section 824 of the Restatement discusses the actions that constitute a "failure to act" within the meaning of that section, stating,

> [o]ne is ordinarily subject to no liability to another merely because he has failed to take positive action to prevent another from being harmed. There are, however, certain circumstances under which the law imposes a duty on a person to take positive action for the protection of another and subjects him to liability if he fails to meet the standard of action required in the particular case. (See §§ 838-840).
>
> [Id. § 824 comment e (citation omitted).]

Among the sections referenced, only Restatement section 839 is relevant to this matter. That section states:

> A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
>
> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and

---

"abnormally dangerous conditions or activities;" however, storage of a UST does not meet the definition of an abnormally dangerous activity under the Restatement, see id. § 520, and plaintiffs do not press that point on appeal.

10

(b) he knows or should know that it exists without the consent of those affected by it, and

(c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.

[Id. § 839.]

Although, as the majority highlights, ante at ___ (slip op. at 20), comment (g) to section 839 states that, "[t]he phrase 'if the nuisance is otherwise actionable' means that all other elements necessary to liability under the rule stated in § 822 . . . must be present in addition to the breach of duty specified in this Section," Restatement (Second) of Torts § 839 comment g (1979), additional comments and illustrations to section 839 create ambiguity as to what that phrasing requires.

The comments to section 839 of the Restatement acknowledge that liability under that section

is not based upon responsibility for the creation of the harmful condition, but upon the fact that [the landowner] has exclusive control over the land and the things done upon it and should have the responsibility of taking reasonable measures to remedy conditions on it that are a source of harm to others.

[Id. § 839 comment d.]

The comments further acknowledge that section 839 does not create "an absolute duty to prevent harm to others at all costs,

11

but merely a duty to do what is practicable and reasonable under the circumstances." Id. § 839 comment e. In my view, that reference to a duty based on what is "practicable and reasonable" should guide our approach to this failure-to-timely-abate nuisance claim brought by plaintiffs. The illustrations provide pointedly helpful insight into the application of section 839 of the Restatement to the instant matter:

> 1. A is in possession of land upon which is situated a tank for the storage of petroleum. B is in possession of land 500 yards from this tank. Without A's knowledge or negligence the tank develops an underground leak and a quantity of oil flows out, saturates A's land and drains into an unknown subterranean stream that carries it to B's land. As a result, B's well that supplies his drinking water is polluted and rendered unfit for use. When A learns of this he immediately removes all the remaining oil from the tank but the oil already in his land continues to pollute B's well for some time. It is found that A's maintenance of the oil tank was not abnormally dangerous. A is not liable to B for failing to take action to remove the oil already in his land, since it would not be practicable to do so.

> 2. The same facts as in Illustration 1 except that when he learns of the leak, A fails to remove the oil remaining in the tank and this oil subsequently leaks out and pollutes B's well for a considerably longer time than it would otherwise have been polluted. A is subject to liability to B for the additional pollution.

> [Id. § 839 comment f, illustrations 1, 2 (emphasis added).]

12

This case comes close to factually mimicking illustration 1, but the present reality is that one can, and now does, remove contaminated dirt in spill cleanups as a normal practice.  See, e.g., Marsh v. N.J. Dep't of Envtl. Prot., 152 N.J. 137, 140 (1997) (noting landowner's $41,000 expense for removing underground gasoline tanks and accompanying contaminated soil); Lacey Mun. Utils. Auth. v. N.J. Dep't of Envtl. Prot., 369 N.J. Super. 261, 269 (App. Div. 2004) (noting removal of 4000 tons of gasoline-contaminated soil); see also Sensiet Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 379-80 (2008) (discussing removal of lead-contaminated soil in residential lots neighboring plaintiff's factory); Twp. of Montclair v. Hughey, 222 N.J. Super. 441, 443-44 (App. Div. 1987) (noting removal of "15,000 barrels of contaminated soil" in residential lots). What once may not have been practicable is now practicable and a typical remediation practice for oil spills and other environmental contamination of soil.  The illustration is outdated; it has not kept pace with current typical remediation practices.  Thus the foreseeable harm to a neighboring landowner from a leaking oil tank spreading its contamination onto another's property has a practicable remedy, and fairness dictates that the duty to abate this intrusion should be addressed in a reasonably timely manner.  See Hopkins, supra, 132 N.J. at 439.

13

I would recognize the modern times in which we live and hold that one can be liable under a failure-to-timely-abate theory. As the majority concedes, the New Jersey Spill Compensation and Control Act is no impediment to this development of our common law, ante at ___-___ (slip op. at 13-14 n.6) (citing N.J.S.A. 58:10-23.11v). Therefore, I would allow this claim to proceed.

Although I dissent in part from the judgment of the Court in this matter as noted, I concur in the majority's conclusion that plaintiffs are not third-party beneficiaries of the applicable insurance contracts and have no direct cause of action against the insurance carrier defendants.

SUPREME COURT OF NEW JERSEY

NO. ___A-101___                          SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


JOHN ROSS and PAMELA ROSS,

     Plaintiffs-Appellants,

          v.

KAREN A. LOWITZ f/k/a KAREN A. SANTORA;
CALVIN HALEY, SUSAN ELLMAN, NEW JERSEY
MANUFACTURERS INSURANCE COMPANY, HIGH
POINT PREFERRED INSURANCE COMPANY,

     Defendants-Respondents.

_____


STATE FARM FIRE & CASUALTY COMPANY, a/s/o
KAREN SANTORA and NEW JERSEY
MANUFACTURERS INSURANCE COMPANY a/s/o
KAREN SANTORA,

     Plaintiffs-Respondents,

          v.

SUSAN ELLMAN,

     Defendant-Respondent.


DECIDED _____August 6, 2015_____
_____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Justice Patterson_____
CONCURRING/DISSENTING OPINIONS BY ___Justice LaVecchia___
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | CONCUR IN PART/DISSENT IN PART |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | | X |
| JUSTICE ALBIN | | X |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | | X |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 4 | 3 |